### J. M. ROGERS v. GALVESTON CITY RAILWAY COMPANY.

#### No. 2729.

1. **Defective Platform to Street Railway Car.** — A defect in the floor of the platform of a street railway car upon which the driver stands is patent—known as well to the driver as to the owner of the car. A driver therefore can not complain against the owner for such defect although injured thereby.

2. **Same—Master and Servant.**—The servant assumes the risk ordinarily incident to his employment, and such as arise from open and visible imperfections of things.

about which he is employed, and of defects which he might have known by using ordinary care.

3. **Same.**—See facts showing defects in the platform of a street railway car which should be taken notice of by the driver standing upon it.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*S. S. Hanscom* and *F. M. Spencer*, for appellant. —1. It was the primary duty of appellee as master to furnish appellant a safe and suitable place to stand and safe appliances for prosecuting his duties as car driver, and he had the right to rely upon appellee having done its duty in this regard; and the defect in the platform not being of such nature as to warn appellant of the danger, and appellant having been injured while performing a duty which had been specially enjoined by appellee, his mere knowledge that there was a plank nailed on said platform would not alone preclude his recovery. Wood's Mast. and Serv., 2 ed., secs. 327, 329, 330, 334, 336, 344, 345, 347–49, 353, 354, 357–60, 368, 369, 385, 387–89; Snow v. Railway, 8 Allen, 441; Railway v. Lempe, 59 Texas, 19; Railway v. Donnelly, 70 Texas, 371; Railway v. Silliphant, 70 Texas, 624; Railway v. Vallie, 60 Texas, 481; Railway v. McNamara, 59 Texas, 257; Railway v. Dunham, 49 Texas, 181; Railway v. Douglass, 73 Texas, 325; Railway v. Garrett, 73 Texas, 262.

2. There being no evidence whatever that appellant knew or apprehended the danger from the plank nailed on the platform, it was error for the court to instruct the jury as to appellant knowing the danger of said defect; and this part of the charge is inconsistent with the first part of the charge and was misleading to the jury. They were thus given two different rules, antagonistic to each other, which, taken in connection with the court's repeated warnings to the jury throughout the charge about the injury being appellant's own sad misfortune, and not to let their sympathies have anything to do with the case, and not to let their sympathies or bias or prejudice influence their verdict, was clearly indicative to the jury of the view the court entertained, viz., that plaintiff ought not to recover, and the case was thereby virtually withdrawn from their consideration. Wood's Mast. and Serv., sections already cited under preceding proposition and sec. 456; Rev. Stats., art. 1317; Railway v. Nixon, 52 Texas, 19–28; Bradshaw v. Mayfield, 24 Texas, 481; Rogers v. Broadnax, 24 Texas, 538; Railway v. Tankersly, 63 Texas, 57; Cannon v. Cannon, 66 Texas, 682; Boaz v. Schneider, 69 Texas, 128.

*James B. & Charles J. Stubbs*, for appellee, cited Railway v. Bradford, 66 Texas, 732; Railway v. Lempe, 59 Texas, 19; Jenney Electric Co. v. Murphy, 18 N. E. Rep., 30; O'Keefe v. Thorn, 16 Atl. Rep., 737; Moulton v. Gage, 138 Mass., 390; Marsh v. Chickering, 101 N. Y., 398;

Walsh v. Railway, 2 Am. and Eng. Ry. Cases, 144; Railway v. Smith, 15 Am. and Eng. Ry. Cases, 224.

COLLARD, Judge.—The platform of the street car on which appellant, the plaintiff below, was a driver at the time of the injury, becoming worn by the feet of the drivers continually standing thereon, it was repaired by two planks which were nailed down on the floor. The platform at the front part is five feet across; its general width is five feet and five inches. One of the planks nailed down in front near the dashboard is eleven inches wide and two feet long, and the other plank is nine inches wide and two feet five inches long; they touch each other, and are beveled down at the edges; one of them is not more than a half inch thick and the other said to be five-eighths of an inch; the thinner one is in the rear; they do not extend all the way across the platform. Plaintiff testified that there was a small space between the boards, but the photograph sent up with the record does not show it. This patch is the defect complained of which it is alleged caused the injury. The position of the driver was on the front board. Plaintiff said in his testimony, "If I stepped to the front or back of it, either my heel or toe would be the higher, and on account of the long hours it was very tiresome.

Plaintiff's testimony gives an account of the occurrence as follows:

"As I crossed Twenty-seventh Street I looked right and left, as orders were and as I always did. I saw no one in sight. I had got about two car lengths west of the west side of Twenty-seventh Street when I heard some one call out, 'Hey!' I could hear the call very plainly. When I heard that hail I was standing up on the platform with my lines in my left hand and my right hand on the brake, and I immediately reached out my right hand and grabbed hold of my lines and stepped over to the left side of the car and reached out to look back. As I did so, the mule gave a jump; whether he thought I was going to strike him on the fore feet, as drivers do, I don't know, but he gave a very great jump, just as if he had been struck, and that threw me around; I had a tight line, and before I knew it I was over the car. When he gave that jump my foot slipped on a board that was on the floor of the platform (the front board). I could see after I got on the car where my foot slipped; I was standing on that board and I stepped a little over to the left to see where the sound came from. I was not positive the hail was for me and I did not put the brake on; I did not know whether the hail was for me or the car I had just passed. If there had been no other car around there I would have stopped my car without looking back. I was just balancing on my right toe and left foot on that board, and I was jerked around and turned a full somersault and went over; the board was where the driver stood. * * * If I stepped far over to the left I would step off the board.

"When I heard this call I stepped over to the left so quick I did not

see where I put my feet; I don't think my whole foot was on the board, and my foot slipped off the board; the board did not quite cover the hole even then. If that board had not been there I would not have fallen; if the floor had been smooth from one side to the other I would not have slipped and fallen. I never drove a car fixed like that before this car. * * * The board had been worn some by the drivers' feet, and it was between three-quarters of an inch and one inch thick above the floor of the platform. * * * I notified the car repairer of the defect, and he said he had no time to fix it. * * * I had no idea of any danger from driving with that board there.

"If I drove for a year I might not have occasion to look for passengers that way again. * * * I wasn't thinking about any danger from the plank; I was looking for the passenger. Of course I knew the plank was there, but I didn't apprehend any danger from it. * * * When I was doing my duty and wanted to do it properly I wouldn't always look just where I would put my feet; I wouldn't have a chance to always look to see where to step. I didn't regard the plank as dangerous in any way; I wanted it repaired, though, as it was very tiresome to stand on. * * * That plank had been there all the time I had been driving the car—four days; I was told it was there before that."

The plaintiff had been in the service of defendant as driver about nine months before the accident.

From the foregoing statement of plaintiff's case, as made by his own testimony, we are unable to see any grounds for recovery.

The employer is bound to use ordinary care in furnishing his employe with safe appliances suitable to his employment; but to authorize a recovery by the employe for injuries occasioned by a dangerous defect in the same, it must be shown that he did not know of the defect, and could not have known it by the use of ordinary care.

The servant assumes the risk ordinarily incident to his employment, and such as arise from open and visible imperfections of things about which he is employed, and of defects which he might have known by the use of ordinary care. These are elementary principles.

Chief Justice Stayton announced the law applicable to this case as follows: "The liability of the master to the servant for injuries resulting from the use of defective implements arises from the fact that it is the duty of the master to furnish implements not defective, and a servant, unless the defect be patent, may assume that the master in this respect has performed his duty; but when he has knowledge that the master has not done so, if he continues in the employment in which such defective implements are used, he must ordinarily be held to assume the risks incident to the service as it is attempted to be carried on, and not to assume only the risks incident to such service when carried on with implements not

defective of their kind and suitable to the work undertaken." Railway v. Bradford, 66 Texas, 734.

Testing the case before us by these established principles, we can not see how plaintiff can recover. The patch on the floor of the car platform and its condition was open to common observation, visible to every one, and was in fact known to plaintiff. There was no concealed danger about it; nothing that a man of ordinary intelligence could not understand. No expert was required to note the physical facts and determine the consequences possible upon its use. Plaintiff was a man of mature years and nine months experience in defendant's service; the floor was obviously uneven, and the probabilities of stumbling over it or slipping upon it were as open to plaintiff as to defendant. The simplest natural laws were involved in any conjecture that might be made as to risk of its use, and plaintiff would be presumed to understand these as well as the company, and he must be held to have assumed the risk incident thereto.

The following authorities cited by appellee are in point and abundantly sustain the view we have taken of the facts of the case: Jenney Electric Co. v. Murphy, 18 N. E. Rep., 30; O'Keefe v. Thorn, 16 Atl. Rep., 737; Moulton v. Gage, 138 Mass., 390; Miller v. Chickering, 101 N. Y., 398; Walsh v. Railway, 2 Am. and Eng. Ry. Cases, 144; Railway v. Lempe, 59 Texas, 19.

Where a servant is employed about machinery or anything, and special knowledge is required to know or apprehend what constitutes a defect, though open to observation, and whether its use would be dangerous, other principles apply; but here we have nothing more complicated than a horse wagon or a plow used in the ordinary way, having repairs upon it, the danger of which can be appreciated by the driver of ordinary intelligence and prudence as readily as any other person. Authorities *supra.*

Our conclusion is the judgment of the court below should be affirmed.

*Affirmed.*

Adopted March 18, 1890.