FORT WORTH & RIO GRANDE RAILWAY COMPANY V. WILL ROBINSON.

Decided December 17, 1904.

**1.—Master and Servant—Assumed Risk—Knowledge of Servant.**

Where the servant, a member of a bridge repairing gang, knew that the jack furnished for use in raising bridges while being repaired, was the kind always used and furnished by the company for such work, he assumed the risk incident to its use.

**2.—Same—Warning of Danger.**

Whether or not the danger resulting from the use of the jack arose out of the negligence of the master, became an immaterial question where the servant was given warning of the danger, by the usual cry of "Watch out for the drop," in time to have saved himself from injury, since in such case the negligence of the master was not the proximate cause of the injury.

**3.—Same—Constructive Knowledge.**

The servant assumes the risk of all dangers of which he has actual or constructive knowledge, meaning by the latter such knowledge as he necessarily would have acquired in the exercise of ordinary care for his own safety.

**4.—Same—Contributory Negligence.**

The failure of the servant to get from under the bridge, which was jacked up, after the customary warning to look out for the drop, was contributory negligence such as can not be justified on the ground that it resulted from forgetfulness on his part and mere inattention to his surroundings.

Appeal from the District Court of Erath. Tried below before Hon. W. J. Oxford.

*West, Chapman & West, Martin & George,* and *Theo. Mack,* for appellant.—Where the servant is performing an ordinary function incident to his employment or merely discharging a duty under normal

conditions, his want of attention to surrounding or imminent dangers, of which he has knowledge can not be excused. He is excused only where the circumstances were either such as to create a situation approaching to or constituting an emergency or such as to exhibit the servant in the light of a person who was discharging a duty which demanded an unusual amount of attention. 1 Labatt Mast. & Serv., sec. 351.

*Riddle & Keith*, for appellee.—The evidence in relation to assumed risk, obvious danger and contributory negligence was such as warranted the verdict in plaintiff's favor. American Cotton v. Smith, 69 S. W. Rep., 443; Proffitt v. Railway Co., 95 Texas, 593; Railway Co. v. Davis, 65 S. W. Rep., 83; Railway Co. v. Bach, 65 S. W. Rep., 681; Missouri, K. & T. Ry. Co. v. Bodie, 74 S. W. Rep., 100; De la Vergne, etc., Mach. Co. v. Stahl, 60 S. W. Rep., 319; Sincere v. Compress Co., 40 S. W. Rep., 326; Republic I. & S. Co. v. Jones, 69 N. E. Rep., 191.

Where the servant fails to take such precautions as are appropriate for the purpose of protecting himself at the moment when the accident occurs, evidence that such failure was due to the fact that his attention was engrossed by his duties is always competent for the purpose of rebutting the inference of contributory negligence which might otherwise be drawn from his conduct; and especially is this the case where the situation of the servant, under the circumstances, approaches an emergency, or requires of him prompt action. Railway Co. v. Smith, 51 S. W. Rep., 506; Goodfellow v. Boston, etc., 106 Mass., 46; 1 Labatt's Master and Servant, sec. 350; Republic I. & S. A. Co. v. Jones, 60 N. E. Rep., 191; American Cotton Co. v. Smith, 69 S. W. Rep., 443.

SPEER, Associate Justice.—Appellee, an employe of appellant, sued appellant to recover the sum of $25,000 damages for personal injuries received by him while engaged with a number of other employes, under the direction of a foreman of appellant, in repairing a railroad bridge. The company was alleged to have been negligent, (1) in furnishing to its employes constituting the bridge crew a dangerous and unsafe jack known as a ratchet jack, to be used in making bridge repairs; (2) in not furnishing appellee a safe place to work; and (3) in ordering him into a place of danger without warning, when he was ignorant of such danger. The defenses were general denial, assumed risk and contributory negligence. The trial resulted in a verdict and judgment for appellee in the sum of $8,750.

Appellant has grouped four assignments of errors and presents them here as one, complaining of the error of the court in overruling its motion for a new trial, because, for one reason or another, the verdict of the jury is contrary to the charge of the court and the facts proved. We would possibly be authorized to disregard this assignment as being in violation of the rules in grouping assignments which relate to different subjects; but inasmuch as we have found other errors which probably raise the same question, and which would require a reversal of the judgment, and inasmuch as we have considered the evidence and think

it entirely insufficient to support the verdict, we have considered the assignment.

The evidence shows that during the temporary absence of appellee, the foreman of the bridge crew directed that that part of the superstructure of the bridge described by the witnesses as the deck should be jacked up in order that some needed repairs might be made; that the deck of the bridge was jacked up, according to the estimate of the various witness, from one to four inches. Upon appellee's return to the bridge he was directed by the foreman to go beneath it and excavate some earth for the purpose of placing some foundation timbers. Before he had finished making the excavations the workmen above him had finished their repairs and were ready to lower the deck of the bridge. At this juncture the employe having in charge the operation of the jack gave the accustomed signal to those underneath, which was, "Watch out for the drop." In a short time, probably a few moments, he repeated the signal, "Watch out for the drop," and tripped the jack, which allowed the deck of the bridge to fall to its accustomed resting place. The appellee heard the signals in time to have gotten from under the bridge, and failed to heed them, and in consequence was struck on the head and received the injuries complained of.

It is undisputed that appellee knew that the character of the jack known as a ratchet jack, the use of which he alleged to be negligence, was the kind of jack always used and furnished by the company for such work. He admitted as much himself. It is clear then that he assumed the risk incident to the use of this kind of a jack in repairing bridges. It remains to be seen if the appellant has been shown to be negligent in the other particulars mentioned.

The principles of law governing the master's duty in the particulars of furnishing his servant a safe place to work, and of giving him timely warning of danger, are too well understood to be here discussed at length, or to require citation of many authorities. As we understand the rule applicable to facts such as above shown, the master has discharged his full duty toward his servant when he has given him timely warning. Whether the danger arises out of an unsafe situation growing out of the negligence of the master or not becomes entirely immaterial if the servant is apprised of the danger in time to save himself from injury. In such case the master is guilty of no negligence approximately causing an injury, and of course is not liable at the suit of the injured servant. In the present case, conceding the appellant to have been guilty of negligence in furnishing an improper jack, and in not exercising ordinary care to furnish appellee a safe place to work, and in not warning him of the danger incident to the bridge's being jacked up prior to sending him to work beneath it; yet it must be admitted that if such warning was given him prior to the dropping of the bridge as would have enabled him in the exercise of ordinary care to have averted the accident, it was his duty to do so, and his failure can not in any just sense be attributed to the appellant, or its conduct in any legal sense be said to be the proximate cause of his injuries. But we are inclined to the view that the undisputed evidence shows that appellant exercised

ordinary care to discharge the full measure of its duty toward appellee upon the occasion of his injuries.

But again approaching the case from the side of the defense, let us see if appellee is not precluded from a recovery both upon the theory of assumed risk and of contributory negligence. In the logical order of these defenses we should first inquire if he assumed the risk, for if he did, it is of course immaterial whether in doing so he was guilty of contributory negligence or not, he is barred nevertheless. A servant is held to assume those risks ordinarily incident to the work in which he is engaged, and also the risk of all dangers of which he has knowledge, or of which he would in the exercise of ordinary care for his own safety have acquired knowledge. Now, if under the facts the danger incident to a dropping of the deck of the bridge, as was done in this case, was not an ordinary incident of the work, yet it indisputably appears that by the warning, "Watch out for the drop," appellee became aware that he was threatened from above with this danger. Fully comprehending the meaning of the warning, and fully understanding that he was expected to get out of the way of danger, he nevertheless chose to remain in the position occupied by him, and in consequence was injured. In his own language he says: "The warning, 'watch out for the drop,' was in a loud enough tone of voice so that I heard it all right and understood what it meant; I heard it distinctly; I heard it once and then again just about the time that the drop came; we always gave the warning, 'watch the drop,' or 'look out for the drop,' or 'look out in the hole,' or something like that when we were going to throw down tools or anything from the bridge or when letting down the deck of the bridge where it had been jacked up for any purpose; we always gave some kind of warning before letting down the bridge when jacked up. I heard this particular warning in time to have removed my head from under the ties. I never tried to do that because I didn't think I was in any danger. I knew that something was going to come down from the bridge, tools or timbers. The reason why I didn't step to one side or get out of the way was I didn't think I was in any danger where I was. I could hear his voice where I was when he gave the warning, and I didn't think that the part of the bridge I was under was jacked up; didn't think I was in danger at all. I heard the warning, but didn't think it was meant for me. I made no effort to ascertain if any tools or anything else was going to be dropped from the bridge. This warning that we always gave was a warning to everybody under the bridge to get out, but I paid no attention to it. When the warning was given it was the understanding that every man would look out for himself and seek a place of safety and to get out of the way of the drop, whatever it might be; heard the warning all right; took no steps to see what it was about, whether they were going to drop tools or what not. If I had looked to see I could have seen the track was jacked up. My head was about on a level with the ties and my eyes were right close to where the stringers were. When I heard this warning I could have looked up and seen that the track was jacked up there. I didn't do this. I don't know, but I think that they had the track jacked up and putting in some stringers or shores." Knowing the danger as he did

the appellee must be held to have assumed the risk of injury by remaining as he did under the bridge rather than to seek a place of safety. Stewart v. Philadelphia, W. & B. R. Co. (Del.), 17 Atl. Rep., 639; Anniston Pipe Works v. Dickey (Ala.), 9 So. Rep., 720; Ft. W. & D. C. Ry. Co. v. Gilstrap, 25 Texas Civ. App. 304; 61 S. W. Rep., 351.

It is not necessary that appellee should have known of the precise injury liable to befall him in case of his inattention to the warning, but it is sufficient if he had actual or constructive knowledge that some such injury would probably occur. By constructive knowledge we mean that knowledge that he necessarily would have acquired in the exercise of ordinary care for his own safety. He admits that he knew when he heard the warning, that the deck of the bridge or some tool or timber was going to fall, and he must be held to have known, situated as he was, that such object would probably strike him. The warning meant nothing else. He could not close his eyes to a known probable danger and successfully resist a plea that he had assumed the risk of it. 1 Labatt, Master & Servant, secs. 413, 413a. Neither can he avoid it by proof that he had acted as a reasonably prudent person in the assumption of the risk. Texas & P. Ry. Co. v. Bryant, 8 Texas Civ. App., 134; 27 S. W. Rep., 825. This is a solecism. If he consciously assumed the risk there is an end to his case. But we have adverted to this issue when probably we would not be authorized to reverse the case upon it, inasmuch as the appellant has not specifically urged that ground before us. However, this is not strange, seeing that the act of the employe in dropping the bridge and in giving the accompanying warning was not made a ground of recovery by the appellee. We have discussed this phase of the case because of our conclusions with reference to the disposition of the appeal.

Laying aside for the time being the question of assumed risk, we will next consider the question of contributory negligence. If we are wrong in our conclusions that appellant was not shown to be negligent, and if we assume that it was negligent in one or all of the particulars alleged, yet we are constrained to hold that the circumstances compel a finding that appellee was guilty of contributory negligence proximately causing his injuries. All persons are required to exercise ordinary care to avoid receiving an injury, and it is inconceivable that the conduct of appellee measures up to this standard. While the mere fact that a plaintiff takes some risk in encountering a known danger, does not always conclusively establish contributory negligence (Gulf, C. & S. F. Ry. Co. v. Grisom, 5 Texas Law Jour. 974; 82 S. W. Rep., 671), yet the circumstances of this case are such that the conduct of appellee in taking the risk he did, amounts clearly to contributory negligence, It is culpable from any standpoint. I. & G. N. Ry. Co. v. McCarthy, 64 Texas, 632; Harrison v. T. & P. Ry. Co., 31 S. W. Rep., 242, He can not justify his failure to act upon the warning, as he attempts to do and as the court's charge permitted him to do, by proof that at the time his mind was absorbed in his work. To justify the application of this saving doctrine the circumstances must be such as to indicate an emergency, or such as to require of the servant more than the ordinary attention to his business. To allow it in cases where, as here, the serv-

ant was merely engaged in the prosecution of a simple work incident to his employment under conditions entirely normal, would manifestly be to render the defense of contributory negligence a defense in name only. 1 Labatt, Mast. & Serv., secs. 281, 351. Forgetfulness or inattention to one's surroundings may, and usually do, constitute the very gist of contributory negligence. Nor can he justify upon the ground that he did not fully comprehend the extent of the danger he was in. Truntle v. Woolen Mills Co. (Minn.), 58 N. W. Rep., 832. It was his own fault that he did not. If he had looked or otherwise had exercised the slightest precaution for his own safety he would have known of the precise source of the danger, and could have taken the necessary steps to avoid injury. So that, whatever negligence there may have been upon the part of appellant, the contributory negligence of appellee in failing to take any steps whatever for his own safety, after having received the timely warning, constitutes the proximate cause of his injuries, and hence precludes a recovery herein. International & G. N. Ry. Co. v. Royal, 11 Texas Ct. Rep., 368; Truntle v. Woolen Mills Company, supra; Ft. Worth & D. C. Ry. Co. v. Gilstrap, supra.

For the insufficiency of the evidence to support the verdict and judgment, the case is reversed, and since, as we have shown, it will be impossible for the appellee to establish appellant's liability upon another trial, the judgment is here rendered in the latter's favor.

*Reversed and rendered.*

Writ of error granted.