## W. H. GILMARTIN ET AL. v. SAM KILGORE.

Decided October 31, 1908.

**1.—Master and Servant—Assumed Risk—Knowledge of Danger.**

Where an employe undertakes a work with full knowledge of the defect of which he complains and with full knowledge of the danger involved and with time for deliberation, he is held to have assumed the risk of a resulting

injury, notwithstanding the work may have been performed over his protest and by the express command of the master.

**2.—Same.**

In an action for damages for personal injuries caused by the falling of a scaffold, evidence considered, and held to show that plaintiff, the servant, voluntarily assumed the risk of the injury he received.

Appeal from the District Court of Tarrant County. Tried below before Hon. Mike E. Smith.

*Lassiter & Harrison,* for appellants.—The evidence of the appellee himself showed that he knew and understood the risk of this scaffold falling, and assumed it, and he is not entitled to recover a verdict herein. International & G. N. Ry. Co. v. Figures, 40 Texas Civ. App., 255; Texas & P. Ry. Co. v. Hemphill, 86 S. W., 352; Ft. Worth & R. G. Ry. Co. v. Robinson, 84 S. W., 410; Houston I. & B. Co. v. Pisch, 77 S. W., 1047; Ft. Worth Ironworks v. Stokes, 33 Texas Civ. App., 218; Houston, E. & W. T. Ry. Co. v. De Walt, 70 S. W., 537; Texas S. V. & N. W. Ry. Co. v. Peden, 32 Texas Civ. App., 315; Ladonia C. O. Co. v. Shaw, 27 Texas Civ. App., 65.

*Jas. C. Scott,* for appellee.—Appellee had a right to rely upon his master's assurance of safety of the scaffold. 20 Am. & Eng. Ency. Law (2d ed.), pp. 73, 91, 93, 147.

CONNER, CHIEF JUSTICE.—This appeal is from a judgment in appellee's favor for the sum of two hundred and fifty dollars as damages for personal injuries received while in the employ of appellants. The evidence shows that appellee at the time of his injuries was working upon a scaffold erected by himself and another by the command of W. H. Gilmartin, one of the appellants, for the purpose of removing material from the walls of a building that appellants, as contractors, had undertaken to remove. Appellee charged that the scaffold was insufficient for the labor required of him, and that appellants were guilty of negligence in failing to provide him with a safe place to work.

Appellants pleaded that appellee was an experienced laborer in the character of work he was doing, and an experienced and competent scaffold builder, and fully understood whatever insufficiency there was, if any, in the scaffold, and knew and fully understood the danger involved in its use, and therefore assumed the risk of the injuries of which he complained.

The vital question presented to us is the sufficiency of the evidence to sustain the judgment. We quote the following extracts from appellee's testimony:

"My name is Sam Kilgore; am thirty-nine years of age—forty years old the 17th of next July. I got hurt last spring. Am about six feet tall. Before I got hurt I weighed 220. At the time I got hurt I was working for Gilmartin and Tierney—W. H. and Dan. Last spring, about the 20th or 22d of May, on the evening of the 22d, he (Gilmartin) ordered me to build a scaffold to take down some brick down here at the old drugstore that got burned out; . . . he says, 'you are an

experienced scaffold builder, I will get you to build it;' . . . I says, 'I will have to have somebody to help me;' he says, 'Get two men to help you,' and I got two men to help me and started to build the scaffold; I says, 'What you going to build the scaffold for?' He says, 'Just to take down that brick back there—just a light scaffold—just build a light scaffold—just a couple of men on it;' I says, 'All right.' I taken a two-by-twelve and nailed that to the upright or girder that runs through the building, and then put up uprights two by twelve on the other end against the brick wall, and made it substantial on the girder below that was in the basement; that was on the inside, and I was nailing the centers and had the boys holding it, and he says 'Two or three spikes in each one will do; don't be there all day;' I says, 'All right; I will get it up as quick as I can'—Gilmartin said that; that was his orders, standing right there until I got the scaffold done; he says, 'It is only just for to take down those brick of that wall, to keep them from falling on anybody, down to that big iron lintel;' I says, 'All right;' I can't always dictate with a man about a scaffold because I never had a scaffold fall in my life, and I have worked all over the country on scaffolds; he says, 'Just to take that brick down;' and I went ahead and built it like he instructed me; we taken the brick down; I got on the scaffold and helped them take down and laid them on the joists; as soon as we got the brick down—we got them down quickly—he goes ahead and says, 'Let's take that lintel;' I says, 'The scaffold ain't sufficient to take that lintel down; that lintel weighs about twelve or fourteen hundred pounds;' he says, 'Well, we can take it off the wall and lay it over here;' I says, 'All right,' and me and two more fellows got there and . . . We eased it down to the studding, and he turned around after we got that . . . He says, 'I want that lintel up here;' from there over there it was about fourteen feet back to the wall and the landing on the main joists of the building; he says, 'I want the lintel here;' he says, 'The best way to get that up here is to get some plank, and let's lay up a string of plank and drag it up here;' 'Well,' I says, 'Just as you say; I am here under your orders;' but the lintel is a big bow in like a cradle —like a bellows, ( ),—and it was on that side, and we could not turn it over at the place where it was, and he ordered it turned over; well, we turned it over, and it jarred the scaffold pretty well, and we all started to pull it; we pulled it up to the place where we was going to lift it and land it, but 'No,' I says, 'that is as far as we can go;' I says, 'What can we do now?' He says, 'Well, just take the rope off; we can lift it up;' I says, 'As soon as you put your men down here—enough men to get around this to lift it up over there—this scaffold is going to break;' I says, 'There is too many plank on here, and it is not strong enough;' he says, 'O ——,' (speaking in his way, rashly) "it is sufficient,' and he jumped down himself, and with four or five other men down on there, and me down there—that makes seven or eight men on the scaffold—we all got around it, and he got around it himself, and I toted on the load next to the landing, and he says, 'Give the word, and we will lift;' I says, 'I am a little feared on this scaffold, but, if we go we go, that is all; you are here with us—makes it safer, and lift quicker;' I give the word and made a lift at this lintel on the scaffold, and we failed to lift it that time; I straightened up and I says, 'Boys, you haven't

done nothing; let's lift this thing away; don't be afeared of the scaffold; if it is going to fall it will fall; the man that is paying you is on here;' everybody got around, and me and he both give the word at the same time, 'Lift,' and we never did remember coming up; it went down; just broke a two-by-twelve right half in two and went down. . . . The stringer broke half in two, right at the middle. . . . The nails did not pull out; it just snapped right half in two; had too much load right at the place; they was all right in one place, and lifting in a bunch, and the length of the plank from the other pudlock made all that weight on that, and that heavy lintel and seven or eight men, when we made the spring to lift we threw more forcible power—you know it just snapped right half in two. . . . When I called attention to Mr. Gilmartin that I was afraid the scaffold was not sufficient for the heavy weight, he says, 'O, hell; it was plenty; it was good enough,' and just jumped down himself to show it was good enough; that he would risk himself; that we ought to risk ourselves on it; and got hold of the end of the thing himself, and went down in the basement himself. Except for his orders to put that heavy lintel on the platform I would not have done it. . . . The business I generally follow is scaffolding and cement finisher, cement work, concrete, . . ."

On cross-examination appellee testified as follows:

"Gilmartin told me to build that scaffold because I was an experienced scaffold builder; he knew I was, because I had just finished a building, and I had worked for him off and on four or five years; I had built scaffolds when I worked for him. I had worked for other contractors in the last ten years—for every contractor in Fort Worth—built scaffolds for them; used to build scaffolds for Brice. I was actually an experienced scaffold builder; I knew how to build them, and how strong to build them, and all about it. I was probably just as good a scaffold builder, if not better, than Gilmartin himself; I was better. I built this scaffold, and before I got on it to move that lintel I told Gilmartin that I didn't think it was safe—that I thought it was too weak; I thought it would break with me; he had the scaffold built to take a few bricks down; he did not have it to lift the lintel at all. When I went to remove the lintel I protested, and told him I thought it was too weak—that I didn't think it would hold the lintel; but I did go ahead and attempt to move it; he told us to go ahead, and, of course, he was paying us, and I just kept on. I could have quit his work if I had wanted to, but I knowed it was not no use to quit when there was a lot of men there ready to go to work right in my place. I could have quit if I wanted to." Q. "If Gilmartin had told you to jump out of one of those windows, and you knew it was not safe to jump out, you would quit before you would jump, wouldn't you?" A. "Well, that ain't any question." Q. "You would not have jumped out of the window because he told you to?" A. "No, I guess not; if it would not have been so high I expect I would. If it had been away up yonder, four or five stories, I would have quit him before I would have jumped. I knew this scaffold was not safe to move this lintel; at least, I did not think it was. . . ."

We see no escape from the conclusion that appellee, in law and in fact, voluntarily assumed the risk of the injuries he received. In cases

where an employe, such as was appellee, undertakes a work with full knowledge of the defect of which he complains, and with full knowledge of the danger involved in its use, and with time for deliberation, he is held to have assumed the risk of a resulting injury, notwithstanding the work may have been performed over his protest and by the express command of the master. See Ft. Worth Ironworks v. Stokes, 76 S. W., 232; Ft. Worth & R. G. Ry. Co. v. Robinson, 84 S. W., 410.

We conclude that the judgment must be reversed and here rendered for appellants, and it is so ordered.

*Reversed and rendered.*

Writ of error refused