### LA FOND v. WM. PARR & CO.   (No. 1828.)

Court of Civil Appeals of Texas. Beaumont.
June 6, 1929.

Rehearing Denied June 19, 1929.

John J. Sargent, of Houston, for appellant.
Morris, Sewell & Morris, of Houston, for appellee.

HIGHTOWER, C. J. The appellant, J. H. La Fond, plaintiff below, filed this suit in one of the district courts of Harris county against appellee, Wm. Parr & Co., to recover damages for personal injuries alleged by appellant to have been sustained by him in consequence of certain negligence on the part of appellee while appellant was in the employ of appellee on December 31, 1926.

It was alleged in appellant's petition that on or about December 31, 1926, he was in the employ of appellee as a longshoreman; that on said date appellee was engaged in loading cotton on the steamship "Defender," which was tied up at the docks on Buffalo bayou near the city of Houston; that the cotton was being loaded on the vessel from a barge which was along one side of the vessel; that the barge was much lower in construction and was nearer the surface of the water than the

vessel upon which the cotton was being loaded.

It was further alleged that a rope ladder, that was fastened on top of the vessel and swung loose down to a point near the barge, was provided by appellee for the use of himself and other employees at the time in descending to the barge from the vessel and ascending from the barge to the vessel in the discharge of their duties. It was further alleged that this rope ladder was not held or fastened at the bottom in any fixed manner, and that appellant, acting under orders of his foreman, undertook to ascend the rope ladder when the same *suddenly stretched and swung in such a manner as to cause appellant to lose his hold upon such ladder and be thrown violently* and fall about 25 or 30 feet down upon the barge, sustaining certain personal injuries which were described fully in appellant's petition.

It was further alleged that appellant's injuries were caused directly and proximately by the negligence of appellee, its agents, and servants, in this, "that the said defendant and its agents failed to provide for plaintiff a safe and suitable place to work, and failed to provide for the use of plaintiff and others engaged in the work with him safe and suitable appliances and accouterments that would enable him to perform his work in safety; that plaintiff was, at the time, exercising due care and caution, and was using all diligence to perform his work without injury to himself and others; that he had no experience in using such a rope ladder and had not previously been warned that same was dangerous to ascend or descend, or that same would, at the time, stretch or swing, or that same was not held fast at the bottom so that it would not swing; that it was the duty of defendant to provide such workmen, the plaintiff and others engaged in unloading such barge and placing the cotton upon the said vessel, a safe and suitable means whereby they could ascend and descend from such vessel to such barge upon the ladder, or other mechanical structure that could have been ascended or descended without the same turning, swinging or stretching in such manner as to render the same unsafe, unfit and unsuitable to the workers performing their duties under the directions of said defendant and its agents; and to have warned plaintiff that same was liable to stretch or swing with any wind or strain or jerk or motion of the boat."

Appellee answered by general demurrer, general denial, plea of assumed risk, plea of contributory negligence, and that appellant's injuries, if any, were the result of an unavoidable accident.

To this answer appellant replied by supplemental petition, interposing a general demurrer and a general denial.

After appellant had introduced his evidence and rested, counsel for appellee moved the court to peremptorily instruct the verdict in its favor, which motion was granted, and judgment was rendered upon the verdict so instructed in favor of appellee, and appellant has duly prosecuted this appeal.

It will be seen, from what we have above stated, that the specific acts of negligence alleged by appellant, and upon which he sought recovery in this case against appellee, consisted in appellee's failure in the following particulars:

(1) In failing to furnish appellant a safe and suitable place to work.

(2) In failing to furnish appellant a safe and suitable ladder upon which to descend and ascend from the vessel to the barge and back.

(3) In failing to warn appellant that the ladder was liable to stretch or swing in any wind or sudden jerk or motion of the boat.

The first and third of these specified acts of negligence are now entirely out of the case and no longer insisted upon by appellant, for there is no assignment in his brief raising these points, and, indeed, there was no evidence in the trial court relative to them. Therefore, the only ground of negligence that can be insisted upon by appellant in this court is the alleged failure on the part of appellee to furnish to appellant a safe and suitable ladder upon which to descend and ascend from the ship to the barge and back. With reference to this ground of negligence, we have serious doubt that it was sustained or made an issue for the jury by any evidence adduced by appellant in that connection; but, since we have concluded that the judgment must be affirmed upon another ground, we pretermit any discussion of this point.

We have reached the conclusion in this case that the sixth and seventh counter propositions made by counsel for appellee, by which it is contended that the undisputed evidence in this case sustained appellee's plea of assumed risk, and that, therefore, the verdict was properly peremptorily instructed in its favor and judgment rendered accordingly, should be sustained.

The facts relative to the defense of assumed risk, as shown by the uncontradicted evidence, were, in substance, the following:

The steamship Defender was standing docked at the north side of the Houston ship channel at the time appellant sustained his injuries. A part of the ship's cargo was cotton, which was being loaded from a barge anchored alongside of the ship. A rope ladder with wooden rungs or steps was lowered from the off side of the ship to the barge for appellant and other employees working with him to use in descending from the vessel to the barge and in ascending from the barge to the vessel.

Appellee's first witness, Jesse Nethers, among other things, testified as follows:

"I have had twenty years experience as a longshoreman. * * * I have many times seen this same kind of a ladder. * * * You are talking about rope ladders now with wooden rungs in them, steps. I have used that kind many times. I have climbed up and down them many times. * * * With reference to this ladder that La Fond was using that day to come up on, that was a rope ladder. * * * It was just a swinging ladder, swung any way you wanted to; it was not stationary at the bottom. We don't have them stationary at the bottom.

"I have also said that when a person takes hold of that ladder and gets on it that it would stretch. I believe I said it would stretch accordingly as he put his foot in one end of the rung, that it would stretch that way, swing that way; by that I mean that because it is hanging loose, every step you take it will give. Most every one of that kind of ladder I ever went down on will do that."

The undisputed evidence shows that appellant went down on this rope ladder from the vessel to the barge about an hour before he was injured, and in describing the danger incident to the use of the ladder he testified: "I first discovered that that ladder was unusually dangerous because I could not catch hold of it; I had to grip it with my hands; I had to grip it with one hand when I got on it to go down. I had trouble with it from then on. I had to hold myself by one hand while going down. * * * I held to it the same when I climbed up it as I did when climbing down. * * * When I got on that ladder that morning I knew it was not an ordinary one, and knew that I had to hold on tighter than usual; I knew the same thing when I came up it."

And, further, appellant testified: "I did use diligence in going up that ladder, was careful. I grasped it just like one would hold anything trying to tear it down. I knowed it was an unusual ladder. I never clumb one like that before in my life, and I gripped it. When you caught hold you had to hold on until you moved another hand; and I was doing that. Sure, I was very careful. I didn't have any need to be careless for I knew there was nothing between me but the barge and the water and I knew if I fell in the water I would drown and if I fell on the barge I knew I would get killed and I was careful."

And, further, he testified: "When I stepped on that ladder, starting up, as I have explained to the jury, I was mighty careful. I was careful because I thought it was my life. I knew I could not climb the ladder with one hand like I could with a wooden ladder. I knew the way it came down that I had not been on a ladder like that and I grabbed; where I could see I could put my foot I pulled myself mostly by my muscles, holding, and just when I got near the top of it the ladder dropped, just dropped all of a sudden. * * *

I have clumb a good many ladders in my work as longshoreman but had never clumb one before like that one. I have clumb the others. I have seen ladders hanging over boats going to barges before this one, but have never climbed up and down ladders in that shape. * * * At different seasons of the year I have seen ships come in to port there and use these rope ladders. I have, as I said, been using ladders seven or eight years in that work, but not like that. We don't use these rope ladders altogether; we use them sometimes. * * * Just for a certain amount of cotton that goes to different ports that is made up here in town on barges you do have to use them. They do have to use the rope ladders to unload barges."

The undisputed evidence in this record shows that appellant is a man 46 years of age and that he has been working around vessels and barges loading and unloading them as a longshoreman for a period of time between 7 and 10 years, and that he was, in every respect, at the time of his injuries, thoroughly familiar with the nature of that work and was, in all respects, an experienced man in longshore work. We have concluded from his testimony, as well as that of his witness, Jesse Nethers, that it could not be reasonably doubted by any fair and impartial juror that appellant was fully aware of all the danger that was attendant upon the use by him of the rope ladder that was furnished by appellee in this case and from which appellant fell and sustained the injuries for which he brought this suit. The evidence makes it plain that whatever danger there was attendant upon the use of this ladder by appellant was obvious, and, indeed, could not have been hidden from him, the experienced man that he was, at the time he undertook to ascend this ladder from which he fell. Such being true, the plea of assumed risk interposed by appellee in this case (and that plea was admittedly available to appellee in this case) was made out beyond any question, and, therefore, the court properly instructed the verdict in appellee's favor.

We think the following authorities fully sustain appellee's contention, with which we have agreed, that its defense of assumed risk was fully sustained in this case: Rogers v. Galveston City Railway Co., 76 Tex. 502, 13 S. W. 540; Green v. Cross, 79 Tex. 130, 15 S. W. 220; International & G. N. Railway Co. v. Story, 26 Tex. Civ. App. 23, 62 S. W. 130; Ft. Worth & R. G. R. Co. v. Robinson, 37 Tex. Civ. App. 465, 84 S. W. 410; Hightower v. Gray, 36 Tex. Civ. App. 674, 83 S. W. 254; St. Louis Southwestern R. Co. v. Hynson, 101 Tex. 543, 109 S. W. 930.

Counsel for appellant make two other contentions for reversal of the judgment in this case, the first of which is that the trial court was in error in refusing to permit appellant to file a trial amendment, as he offered to do.

754

This trial amendment was not offered by appellant until the evidence had been proceeded with at some length, and the bill in this connection is very brief and fails to disclose any abuse of the discretion which was vested in the trial court in permitting the trial amendment to be filed at the time it was offered. The other contention by appellant is that the trial court was in error in rejecting certain testimony offered by him which could have only been properly admitted to sustain the offered trial amendment, and, therefore, there was no error in the court's ruling in this connection.

It follows from the conclusions above expressed that the judgment in this case should be affirmed, and it has been so ordered.