## Will Robinson v. Ft. Worth & Rio Grande Railway Company.

### No. 1437.   Decided June 5, 1905.

**Negligence—Master and Servant—Fact Case.**

A servant placed at work under a bridge of which the deck or part on which the ties rested had been raised up by a jack above the stringers was injured by being struck by one of the ties when the jack was released and the deck allowed to drop into place on the stringers. The usual warning "look out for the drop" was given, and was heard by him, but he assumed that the drop would be at the place whence the signal came, and not where he was at work though he could have seen the contrary merely by looking at the bridge. Held that he could not recover, and the appellate court, on reversing a judgment in his favor probably rendered judgment for the defendant.   (Pp. 111, 112.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Erath County.

Robinson sued the railway company and had judgment. The company appealed, and on judgment being reversed and rendered in its favor, Robinson secured writ of error.

*R. L. Carlock* and *Riddle & Keith*, for plaintiff in error.—The evidence being ample to support the verdict of the jury on all of the points complained of, the trial court did not err in refusing to grant its motion for a new trial on either of the grounds therein stated.

In Texas & N. O. Ry. Co. v. Kelly, 8 Texas Ct. Rep., 703, it is said: "By almost all courts it is held that the fact that the servant has been directly ordered to do the act which caused the injury introduces into the situation a differentiating circumstance, which will render his contributory negligence a question for the jury in nearly every conceivable state of the evidence. It does not follow that because the servant could justify a disobedience of the order he is guilty of negligence in obeying it."

*Obvious Danger—Assumed Risk and Contributory Negligence—Act of Fellow Servant.* American Cotton Co v. Smith, 69 S. W., 443.

*Dangerous Place—Master and Servant—Measure of Protection—Assumed Risk.* Proffitt v. Missouri, K. & T. Ry. Co., 95 Texas, 593; Galveston, H. & S. A. Ry. Co. v. Davis, 65 S. W., 217; Galveston, H. & S. A. Ry. Co. v. Buch, 65 S. W., 681; Missouri, K. & T. Ry. Co. v. Bodie, 74 S. W., 100; De la Vergne, etc., Mach. Co. v. Stahl, 60 S. W., 319; Sincere v. Union C. & W. Co., 40 S. W., 326; Republic I. & S. Co. v. Jones (Ind. App.), 69 N. E., 191.

*West, Chapman & West,* and *Theodore Mack,* for defendant in error.—The court erred in overruling defendant's motion for a new trial because the verdict of the jury was contrary to the law and testimony in that the undisputed testimony showed that the plaintiff heard the warning, "Look out for the drop," heard it repeated, heard it twice in ample time to have avoided the accident and himself undertook to decide, contrary to the general understanding of the rules, whether or not he was in danger, and made a mistake in this respect and thereby caused or contributed to cause the injury, and was guilty of negligence or contributory negligence and in either event should not have recovered.

WILLIAMS, ASSOCIATE JUSTICE.—Plaintiff in error recovered a judgment for injuries sustained by him while in the service of defendant in error, as he claims, through its negligence. The Court of Civil Appeals reversed this and rendered judgment in favor of defendant, expressing the opinion that no negligence on part of defendant was shown, but basing its action upon the grounds that if there was negligence on defendant's part, plaintiff had assumed the risk of those things in which he claimed it to have consisted, and was also guilty of contributory negligence.

This writ of error was granted under the belief that the evidence was such as to entitle plaintiff to a submission of all of these questions to a jury and that the Court of Civil Appeals erred in rendering final judgment. We have reached the conclusion, however, that the judgment was correctly rendered.

Plaintiff was a member of a bridge gang, of which one Brown was foreman, and was hurt while a bridge was being repaired. In plaintiff's absence, the deck, or part of the bridge above the stringers on which the cross ties rested, had been raised by means of a ratchet jack, and was in this condition when plaintiff came upon the scene and reported for work. The foreman, without informing him that the bridge was "jacked up," directed him to dig some holes in the ground near one of its ends, and plaintiff, in ignorance of the fact, although he could have seen the elevation had he looked at that part of the bridge, went under it and did as directed. While he was thus engaged the bridge was suddenly lowered by one of the employes and a descending cross tie struck him on the head. This was done by "tripping" the jack by means of the lever, so that the deck of the bridge was allowed to drop back into its former position. Before releasing the bridge in this way the employe operating the jack exclaimed, "look out for the drop," and, after a short interval, repeated the same warning and at once let the bridge fall. Plaintiff distinctly heard the signal and had time to have gotten out of reach of danger, either by stooping or stepping back a few inches, before the bridge fell, had he known the danger to be avoided. He says he did not think he was in any danger but thought that if the bridge was jacked up at the point from which the signal came this would not affect him, and that the warning was intended for others. The elevated ties were within a few inches of his eyes and he could

have seen at a glance that the deck was separated from the stringers had he looked, but, paying no attention to the warning, he simply worked on.

The evidence establishes beyond dispute the facts that this work was done in the customary way; that the jack was of a kind commonly used for the purpose; that the warning given was the one usually employed to enable the workmen to get out of the way of the falling bridge; and that with all this plaintiff was familiar. It also appeared, however, that the words employed as a warning were habitually used, not only when a bridge was to be lowered, but when anything, such as tools, timbers, and the like, were to be dropped from a bridge; and it seemed to us when we granted the writ, that a jury might legitimately find that there was negligence in putting the plaintiff in such a position without notice of the condition of the bridge and of the intention to lower it, and in letting it down with no warning but one which did not necessarily inform him of the particular danger to be avoided; and that if he was confused and misled by the indefinite character of the signal, he was not necessarily chargeable with contributory negligence or assumption of risk. This was the theory of the case presented in the application, but we find it is not supported by plaintiff's testimony. He states unequivocally that the signal, whether given for one purpose or another, meant that all those under a bridge should go out, and the reason he gives for not doing so is, not that he expected something else to drop, but that he did not think he was in danger. He further shows that he thought of such a contingency as a fall of the bridge, and concluded that the drop would be at a place from which the signal came and not where he was. At the same time he could have seen by merely looking before or above him the condition of the bridge. In admitting that the warning here given was all that was usually given and that it meant for all to go from under the bridge, he, in effect, concedes that the defendant's other employes gave the only notice that was necessary or customary, and that he failed to act upon it on his own judgment that he was not in danger, and not because he did not know its significance. His injury is, therefore, as held by the Court of Civil Appeals, chargeable to his own mistake and not to the negligence of others.

*Affirmed.*