### Brownwood Oil Mill v. L. M. Stubblefield.

#### Decided January 7, 1909.

**1.—Master and Servant—Duty to Give Warning.**

The general principles governing the issues as to experience and knowledge of the servant in regard to dangers of the service and the duty of the master with respect to giving the servant warning of dangers, stated and discussed.

**2.—Same—Facts.**

In the case of an employe in an oil mill injured by having his hand caught in revolving cog wheels while oiling machinery, the servant being twenty-seven years of age, one who had worked at the carpenter's trade and in gins and mills before, and the machinery being a common mechanical device the danger from which was open to the observation of men of common intelligence, evidence considered and held insufficient to justify the submission of the issue as to the master's duty to warn the servant of the danger.

**3.—Servant's Contributory Negligence—Charge.**

Where a servant was injured in oiling machinery, steadying himself by the support of a timber not placed there for that purpose, which giving way caused his hand to be caught in revolving cog wheels, a charge which relieved him from contributory negligence if he had first tested the support to see if it was secure was incorrect, and a requested instruction properly submitting the issue should have been given.

ON MOTION FOR REHEARING.

**4.—Negligence—Assumed Risk—Charge.**

A requested charge holding defendant liable for negligence in leaving an unsecured piece of timber in such position that an employe might rely on it for support in oiling machinery, where a servant, without contributory negligence, was injured in so doing, was incorrect in ignoring the issue as to the effect of knowledge by the servant of its insecurity.

**5.—Dangers of Service—Skill and Knowledge Required of Servant.**

Evidence of the high degree of knowledge of machinery necessary on the part of a servant to properly oil it, held not to require the inference that the same knowledge was necessary in order to appreciate the danger of being caught in the cog wheels while so doing.

Appeal from the District Court of Brown County. Tried below before Hon. Jno. W. Goodwin.

*Jenkins & McCartney* and *Lassiter & Harrison,* for appellant.—Plaintiff was not an inexperienced employe in the sense that the defendant owed him any duty to warn or instruct him with reference to his duties or the dangers, if any, attending the same. That he is presumed to have known the danger: Railway Co. v. Denton, 101 S. W., 452; Ft. Worth Stock Yards Co. v. Whittenberg, 34 Texas Civ. App., 163; Railway Co. v. Spellman, 34 S. W., 298; Texas & Pac. Ry. Co. v. French, 86 Texas, 96; Railway Co. v. Lempe, 59 Texas, 22. On proximate cause: Duerler Mfg. Co. v. Dulney, 83 S. W., 890; Railway Co. v. Harton, 81 S. W., 1236; Roe v. Thomason, 61 S. W., 582; Texas & Pac. Ry. Co. v. Bigham, 90 Texas, 223; Railway Co. v. Neely, 60 S. W., 282; Hilje v. Hettich, 95 Texas, 321.

The defendant had a right, by special charge, to have any matter of defense specifically submitted to the jury, and the law pertaining to it applied to the facts as disclosed by the evidence. Chicago, R. I. & G. Ry. Co. v. Conners, 101 S. W., 480; Railway Co. v. Hoard, 49 S. W., 142; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635.

That the verdict of the jury is contrary to the law and the evidence, and unsupported by the evidence: Railway Co. v. Robinson, 84 S. W., 412; Railway Co. v. Powell, 84 S. W., 674; Burns v. Lumber Co., 87 S. W., 164; Dallas v. Ry. Co., 76 S. W., 222; Rodriguez v. International & G. N. Ry. Co., 27 Texas Civ. App., 325; Crawford v. Houston & T. C. Ry. Co., 89 Texas, 89.

*Wilkinson & Lee* and *Harrison & Wayman,* for appellee.—The master is bound to disclose to the servant the latent defects and dangers of which he has knowledge, or of which he ought to have had knowledge, in the exercise of reasonable care, attention and diligence, and of which the servant has no knowledge, and which are not discoverable by the exercise of reasonable care on the part of the servant. Emma Cotton Seed Oil Co. v. Hale, 19 S. W., 600-601; Waxahachie Cotton Oil Co. v. McLain, 27 Texas Civ. App., 334; Greenville Oil & Cotton Co. v. Harkey, 20 Texas Civ. App., 225; Galveston, H. & S. A. Ry. Co. v. Hughes, 22 Texas Civ. App., 134; Hillsboro Oil Co. v. White, 54 S. W., 432-435; T. C. I. & R. Co. v. Jarrett, 82 S. W., 224-228; Galveston, H. & S. A. Ry. Co. v. Manns, 84 S. W., 254-

257; S. A. F. Co. v. Drist, 85 S. W., 440-443; T. T. & F. Co. v. Webb, 86 S. W., 782-785.

The defense of assumed risk has no application to this case as submitted to the jury by the trial court. Price v. Consumer's Cotton Oil Co., 90 S. W., 717; Drake v. Ry. Co., 89 S. W., 407; Peck v. Peck, 87 S. W., 248; Fitzgerald v. C. R. P. Co., 155 Mass., 155; Choctow, O. & G. Ry. Co. v. Jones, 92 S. W., 244.

HODGES, ASSOCIATE JUSTICE.—This appeal is from a judgment in favor of the appellee against the appellant for the sum of $5,687.50, based upon a claim of damages for personal injuries. Stubblefield, the appellee, was an employe of the appellant, and while engaged in oiling a portion of its machinery his hand was caught between two revolving cogwheels and crushed. It is claimed that he was inexperienced in that line of work, and the appellant, knowing that fact, failed to instruct him how it could be performed with safety.

The testimony shows that the appellant owned and was operating an oil-mill plant, and that on about the 8th of November, 1905, the appellee was employed as a roustabout, and that it was his duty as such to clean up and do miscellaneous jobs about the mill. He was promised a better position when an opening was presented. On the second night after appellee was engaged the regular oiler for the mill failed to appear for duty, and Stubblefield was assigned to do that work, which carried with it an increase of his wages. The testimony is conflicting as to what took place between appellee and the appellant's foreman, Vick, at the time the change was made; but appellee admits that Vick took him to some parts of the mill, showed him places to oil, and gave him some warning about certain parts of the machinery considered dangerous. He denies, however, that any instructions were given him about oiling the particular place where the accident occurred.

The boxing, or bearing, appellee was oiling at the time of the accident was at the end of a shaft, upon which was fastened a cogwheel about two feet in diameter. Immediately above this wheel was another cogwheel, smaller in diameter, which fitted into the larger one so that both were turned by the same power, moving in opposite directions. This machinery was fastened to a framework about twenty feet from the floor, and between it and the floor were various other articles of machinery in motion when the mill was running. The place for oiling the cogwheel bearings was approached by means of a stairway on the north side of the framework supporting the machinery, and by stepping onto the plank 2 x 12 inches running across from east to west. On top of this plank and running at right angles with it through the center of the framework was a 2 x 8 plank, which reached to the opposite side and rested upon another crosspiece for support. The top of the frame was about five feet six inches, according to the testimony of the appellee, above the planks mentioned. The diagram contained in the record shows that there was lying obliquely across the top of this framework a 2 x 4 scantling, and the evidence shows that this was fastened at one end while the other was loose, and the end exposed. It seems that no one was present at any of the times

when the appellee oiled this particular portion of the machinery, or when the accident occurred. There was no evidence except his own as to how the injury happened, or what position he was in or had been accustomed to assume in oiling this bearing. He had been engaged in this duty from the 9th of November till the night of the 20th, at which time he was injured. He testified that during that time he had oiled the machinery, including that in question, two or three times every night except one. It was shown that the motion of the cogwheels which caused the injury was such that on the north side they turned from their junction point out, while on the south side the motion was toward the junction. So that an object placed in contact with them on the south side would be drawn in between them while on the north side the opposite result would follow. The safer way to oil this machinery, therefore, was on the north side, so far as the danger of being injured by the cogwheels was concerned. We gather from the testimony of the appellee that after one or more trials he adopted the habit of walking across from the north to the south side of the machinery, and while standing on the 2 x 8 plank he would reach above him, take hold of the 2 x 4 scantling for the purpose of steadying or supporting his body, and would lean slightly forward and put the oil in the boxing. He gave as a reason for doing this that the lights were so arranged that when attempting to oil from the north side his body obstructed the light and he had difficulty in finding the place to be oiled. He says he took hold of the scantling above him to steady himself because the motion of the machinery caused a vibration of the framework. According to his testimony, at the time the injury was received he had assumed his usual position for oiling this bearing, had reached up and was holding with the left hand to the scantling on top of the framework, and was leaning his body a little forward with the oilcan in his right hand. The scantling slipped and turned, which caused his right hand to come in contact with the cogwheels and to be crushed by being drawn through between them. The testimony shows that this scantling had been in that position for some time; that it had once been used as a belt-guide, but at the time of the accident was not in use for any purpose; it was merely left lying on the top of the framework. There is no evidence that any other person had ever used it in the manner which the appellee says he did, or had adopted that position for oiling the machinery.

There were several grounds of negligence alleged in the petition, but the court submitted only those involving the inexperience of the appellee in doing the work he was engaged in, his ignorance of the dangers attending it, and the duty of the appellant to instruct him as to the safe way to oil the machinery. The question of whether it was negligence in the appellant to leave the scantling in the position in which it was, unfastened at one end, was also submitted.

It is urged by the appellant that the court erred in submitting the issue of the appellee's inexperience, for the reason that the undisputed evidence shows that he had sufficient experience and knowledge to comprehend the danger incident to approaching and oiling the machinery in which he was injured, and that there was no duty resting upon the appellant to instruct him in that regard.

The facts as to the experience and knowledge of the appellee show that he was a man of about twenty-seven years of age, and nothing is alleged or shown to indicate that he was of less than average intelligence; that he had previously worked at the carpenter's trade for one year, had been employed in a round bale gin about two months, charged with the duty of watching the gin-stands during their operation, and was also required to oil the machinery before it was started in motion; that he had also worked at another mill plant five months hauling bran and feed about the town, and four or five additional months as a watchman; that it was a part of his duty as such watchman to close up the mill at night, watch it to prevent the outbreak of fires, to sweep the floors, dust and oil the machinery every morning before it was started. At both places he was in and around the machinery much of the time while it was in operation, and observed pulleys and cogwheels running. When Vick, appellant's foreman, told appellee that he wanted him to take the place of oiler, appellee thus states what he replied: "I told him this was the first work I had ever done in an oil-mill, and did not know anything at all about them. He says: 'Can you do the work?' I says, 'I guess I can.'"

Cogwheels such as those which caused the injury to the appellee are probably the most common mechanical appliances in use in the operation of machinery. They are not peculiar to oil-mills, but are used in gins and numerous other places for transmitting and distributing the power that moves the machinery. These facts are matters of such common knowledge that they may be judicially assumed. In this instance the wheels were in plain view of the appellee, and their motion was equally open to his observation. It is not contended that he did not know what a cogwheel was, or that he did not see the direction in which they were turning, or that there was any danger which he could not see by a casual inspection of the surroundings. In addition to the general knowledge of simple machinery which an adult of ordinary intelligence would be expected to gain by the experience of the appellee before he began work as an oiler, it is shown that he was not injured till about the ninth or tenth night after he began this work. During that time his duties as oiler required him to go through all of the machinery of the plant, except that in the engine room, two or three times every night. To conclude that during that time, and with those opportunities for observation, a man of his age and experience, shown to have had a sufficient knowledge of mechanics to follow the trade of a carpenter for one year, had not learned enough to know and appreciate the danger of getting his hand caught between two cogwheels revolving in plain view, is to attribute to him a degree of mental incapacity little short of imbecility. There was nothing to conceal their motion or to deceive him as to the proximity of his hand when putting in the oil, and he was bound to take notice of a mechanical law as simple as that of gravitation. As to his knowledge of the danger, he thus testifies:

"Q. Then you knew it was dangerous?

"A. Why, of course I knew it was dangerous, but I did not know how dangerous.

"Q. Well, you knew that if you got caught around one of these pulleys or shafts that it would likely be seriously dangerous?

"A. I knew that if I did get caught it would be dangerous, but I did not know the danger of getting caught.

"Q. Was there any danger of getting caught if you kept away from them?

"A. I suppose not if you stayed far enough away.

"Q.  There was danger when you got close to them?

"A. I suppose there was.

"Q.  You knew that then?

"A. Why, yes, I knew that."

Again he says:

"Q. You oiled two or three times a night?

"A. Yes, sir.

"Q. Did you know if you got your hand caught in that cog it would be dangerous?

"A. Yes, sir; I knew if it would go through there it would be dangerous.  I knew if I got caught in there it would be dangerous.

"Q. Nobody had to tell you that?

"A. No, sir."

In his work on Master and Servant, Mr. Labat (vol. 1, sec. 235), says: "The servant's right to maintain an action on the ground of the nonperformance of the duty of instruction or warning depends upon his ability to establish the following propositions:

"(1) That the master was chargeable with knowledge, actual or constructive, of the existence of the risk.

"(2) That the servant himself did not appreciate the risk, and that his nonappreciation thereof is excusable.

"(3) That the master knew, or ought to have known, that the plaintiff was thus excusably ignorant of the risk, and was by reason of such ignorance exposed to abnormal hazard over and above those which he was presumed to contemplate as incidents of the employment."

We may admit for the purpose of this discussion that the master in this instance knew of the existence of the risk referred to in the first proposition.  But can we say that the evidence is sufficient to justify a finding that the appellee did not himself appreciate the risk, or that if he did not that his nonappreciation was excusable?  The same author says (sec. 237): "Manifestly, it can not be the duty of the master to admonish the servant to be careful when the servant well knows his danger and the importance of using care to avoid it.  It is the duty of the servant to exercise care proportionate to the danger of his situation as he understands it, and if he fails to do so the fault is his, and not his master's."  If the servant has as much knowledge of the danger and of the means of avoiding it as the master could impart, there is no obligation to instruct the servant.  Borck v. Mich. Bolt & Nut Works, 111 Mich., 129, 69 N. W., 254; Groth v. Thomann, 110 Wis., 488; Cincinnati, N. O. & T. P. Ry. Co. v. Mealer, 50 Fed., 725.  Or if the knowledge which may properly be attributed to the servant under the circumstances is such that instructions from the master could not be expected to add to his information, it does not devolve upon the master to instruct.  1 Labat Master and Servant,

sec. 238. Generally, whether the servant should have been instructed or not is an issue for the jury whenever the evidence tends to show a proper case for instruction and that different conclusions may be drawn from that evidence. But where the facts are clear and susceptible of but one construction, it is a question for the court.

We think the undisputed facts bring this case clearly within the above rule making the issue one for the court and not for the jury. Conceding that appellee is correct when he says he did not fully comprehend the danger of oiling from the position he took, that will not of itself excuse him from having assumed the risk. The true test is, would a person of ordinary prudence, having his age and experience, placed in the same or a similar situation, have comprehended the danger and risk? Craven v. Smith, 89 Wis., 119; 1 Labat, Master and Servant, p. 1028, and cases there cited in note 1.

Where the servant has equal facilities with the master for ascertaining the danger incident to the work in which he is engaged, he assumes the risk. Or where the facts show that the servant is of mature years and that the danger was open to observation to any man of ordinary mental capacity, and equally as apparent to the servant as to the master, there is no duty to instruct or warn the servant. Missouri, K. & T. Ry. Co. v. Spellman, 34 S. W., 298; Texas & Pac. Ry. Co. v. French, 86 Texas, 96; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 19; Ft. Worth Stock Yards Co. v. Whittenburg, 34 Texas Civ. App., 163.

We can not call to mind any fact connected with the situation under which the appellee was injured upon which a man of ordinary intelligence and with the experience of the appellee, could have been enlightened by instructions from the foreman. It would be a foolish exaction to require the master to impart information which the servant knows before, and an injustice to hold him responsible for injuries resulting from ignorance of situations and danger which a person of ordinary prudence under the particular circumstances should have known and avoided.

There are various other assignments attacking the general charge of the court and the refusal of the court to give special charges requested by the appellant relating to the issue of inexperience and of the duty to warn or instruct the appellee concerning his duties. But holding as we do, that the evidence was insufficient to call for a submission of those issues to the jury, it is unnecessary for us to pass upon those assignments.

The testimony shows beyond dispute that the immediate cause of the appellee's getting his hand caught was the slipping or the turning of the scantling upon which he rested his weight when leaning forward to oil the cogwheels. Had this remained stationary the accident would not have occurred. Had he known that this was not stationary, or at least sufficiently secure to sustain the weight he put upon it, the probability is appellee would not have taken the risk.

The appellant presented and requested the giving of some special charges submitting the issue of contributory negligence on the part of the appellee in using the 2 x 4 scantling for a support in the manner he did. These were refused presumably upon the ground that the

issue was sufficiently presented in the general charge. The appellant had the right to have the issue as to whether or not this conduct of the appellee constituted contributory negligence presented to the jury substantially as requested. That portion of the general charge which is referred to as covering this issue is as follows: "If from the evidence in this case you believe that plaintiff, in laying hold of and trusting his weight on the 2 x 4 timber, without having first tested the same, if you find that he did not test it, to see that it was sufficiently secure to support him, was guilty of negligence, then you should find for defendant." It will be observed that this charge makes the testing of the timber to see if it would support his weight the criterion for determining whether the appellee was guilty of negligence in thereafter using it, and not whether a person of ordinary prudence would have so used it under the same or similar circumstances. Under this charge if the jury found that appellee first "tested" the timber in any manner he saw fit, and afterward used it as a support, they could acquit him of negligence regardless of whether it was prudent or otherwise for him to have trusted his weight on it in the manner he did. While in some respects the charge was more favorable to appellant than it was entitled to, it failed to present to the jury in the proper manner the issue embodied in the special charges.

For the errors discussed the judgment is reversed and the cause remanded.

### ON MOTION FOR REHEARING.

In the original disposition of this case we overlooked the cross-assignment of error filed by the appellee, and in the motion for a rehearing this has been called to our attention. The cross-assignment is predicated upon the refusal of the court to give the following special charge:

"You are further instructed that if you believe from the evidence in this case that defendant permitted or caused to be placed or left upon, or in close proximity to, the machinery which plaintiff was required to oil, a loose or insecure piece of timber; that such piece of timber was in such a position that it would naturally be laid hold upon by one attempting to perform the work plaintiff was engaged in performing at the time he was injured, for support; and if you further believe from the evidence that the plaintiff exercised that degree of care in selecting the position assumed by him in oiling the machinery, when he was injured, that a person of ordinary prudence would have exercised under the same or similar circumstances; and if you further believe from the evidence that the so placing or leaving said loose piece of timber was negligence, as that term is defined in other portions of the court's charge in this case; and that plaintiff, in the exercise of ordinary care for his safety, laid hold of said piece of timber for support while oiling said machinery at the time he was injured; and that said timber gave way or moved and that plaintiff was thereby injured; and that the negligence, if any, of defendant in so placing or leaving such loose piece of timber was the proximate cause of plaintiff's injuries, then you will find for plaintiff, and assess

his damages as directed in other portions of the court's charge in this case."

While it may be true that the appellee had the right to have the issue embodied in that charge affirmatively presented to the jury, yet we do not believe there was any error in refusing to give the charge requested. It was erroneous in that it ignored the fact that the appellee might have had actual or imputed knowledge of the loose condition of the scantling upon which he rested his weight while oiling the bearings. If he knew, or if his opportunities were such that an ordinarily prudent person would have known, that the piece of timber was loose and not fastened so as to hold his weight, then he assumed the risk of whatever danger might have resulted from the manner in which he used it. It follows from this that whether the appellant was negligent or not in leaving the timber in that situation, its liability for so doing was not to be measured altogether by whether a reasonably prudent person would have taken hold of it under the conditions specified in the charge. We do not think the court committed any error in refusing the charge as requested.

The appellee lays particular stress upon the testimony of W. H. Woods, the day superintendent of the appellant company, in which he stated that a good oiler was supposed to have knowledge equal to that of the superintendent concerning the machinery; that it takes that degree of knowledge and experience to make a good oiler. If we may judge from the application sought to be made of this testimony, counsel for appellee have construed it as referring to the capacity necessary to enable one performing the duties of an oiler to avoid the dangers to which he is thereby exposed. We do not think the witness had any such idea in mind, but that he had reference to the proficiency of the service required of an oiler. To say that one should possess the expert knowledge and experience necessary to qualify him to act as a superintendent of the entire plant in order to be able to merely avoid the dangers to which he might be exposed in performing the duties of oiling the machinery, is to state something that is so unreasonable upon its face that no such meaning will be attributed to the witness in the absence of unequivocal language to that effect.

We have found no reason for changing the former disposition made of this case, and the motion is overruled.

*Reversed and remanded.*