**MAGNOLIA PETROLEUM CO. v. STUDDARD et al.**

No. 1593.

Court of Civil Appeals of Texas. Waco.

May 30, 1935.

W. H. Francis, A. S. Hardwicke and Russell Surles, all of Dallas, and B. W. Baker and J. G. Woolworth, both of Carthage, for appellant.

Long & Strong, of Carthage, and Jones & Jones, of Marshall, for appellees.

ALEXANDER, Justice.

Jim T. Studdard suffered injuries while in the service of the Magnolia Petroleum Company, which injuries resulted in his death. The employer carried workman's compensation insurance, and the insurance carrier is paying compensation as provided by law. This suit was filed by the deceased employee's widow and infant son against the Magnolia Petroleum Company to recover exemplary damages only. A trial before a jury resulted in a verdict and judgment for plaintiffs for $1,500. The defendant appealed.

At the time of his injuries Studdard was working as a "roughneck" or driller's helper in drilling a well for Magnolia Petroleum Company. There were two crews engaged in drilling said well. These crews worked in shifts of twelve hours each, changing at the noon and midnight hours. O. W. Moffett was the foreman or head driller in charge of the crew of which Studdard was a member. One morning shortly before the noon hour, while Moffett's crew was working, what was known as the cat line on the drilling rig broke. Moffett did not repair the line at that time, but left word with the driller in charge of the next crew to order another cat line. When Moffett's crew returned to work at the midnight hour, the line had not been repaired. At about 4 a. m. thereafter, at Moffett's instructions, the deceased and another employee removed what was known as the safety line on the cathead and used it as a cat line. This left the rig without a safety line on the cathead. It was dangerous to operate the rig without such safety line. Shortly thereafter, while the rig was being so operated and as a result of the absence of the safety line, the deceased was killed. The jury, in answer to special

issues, made the following material findings, and none other, pertinent to the liability of the defendant: O. W. Moffett, the driller, had entire control of the whole work and the men there employed, at the time and place Jim Studdard received the injury that caused his death; Moffett was guilty of gross negligence in the manner of rigging up and using the cathead without a safety line and in the speed at which he operated the rotary, in view of his knowledge that the head tongs had no safety line on them, and in failing to stop the machinery in time to avoid the injury to Studdard; and each of said acts of gross negligence was a proximate cause of the injury to Jim Studdard.

Giving the evidence that construction most favorable to the judgment, it shows that Moffett was the head driller in charge of the crew of which Studdard was a member. He had authority to direct the members of his crew in the work being done by them. He had no authority to hire or discharge an employee. The man known as the "tool pusher" had such authority. The tool pusher had charge of the drilling of four or five wells covering a territory approximately twenty-five miles square. He usually made the rounds of the wells under his supervision twice each day, but did not always do so. If a member of the crew failed to obey Moffett's orders, Moffett could not discharge him, but could "set him aside" until the tool pusher came around and then report the matter to him. Some of the witnesses said that Moffett as the head driller could "make it very hard" for an employee who failed to obey his orders. There was no evidence that Moffett was charged with the duty of furnishing appliances necessary for repairs during the progress of the drilling of a well. It was the tool pusher's duty to furnish the necessary appliances for repairing the rig. If anything broke, Moffett would order the necessary repairs from the tool pusher. Moffett had specific instructions from the defendant company, through its superintendent and tool pusher, to at all times maintain a safety line on the cathead and not to use the rig without such safety line.

■ It is appellees' contention that Moffett was a vice principal of the defendant company and that his gross negligence was sufficient to subject the defendant corporation to liability for exemplary damages. It is appellant's contention that, since Moffett did not have authority to hire and discharge employees and was not in charge of a department or division of the company's business, his acts were not the acts of a vice principal, and hence the corporation cannot be held in exemplary damages for his gross negligence. The Supreme Court, in an opinion by Chief Justice Cureton, in the case of Ft. Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.(2d) 397, 402, has so thoroughly discussed all phases of the law with reference to the liability of a corporation for exemplary damages that we do not deem it necessary to refer to any other authorities. We quote the following pertinent portions of that opinion:

"When the Constitution declares that a corporation may be legally liable for exemplary damages for death due to 'gross neglect,' the meaning is that it may become liable because of the gross negligence of some agent of the corporate entity. The question then is, What agent? Is a corporation to be held legally liable for the 'gross neglect' of all of its agents, or does liability arise only when the gross negligence is that of some one of a defined or limited class of agents? * * *

"The Texas rule, reduced to its simplest terms, and applied to a case of gross neglect, means that the default for which punitive damages may be recovered must be that of the corporation, that the grossly negligent act must be the very act of the corporation itself; or, if the act is that of a mere servant or employee as such, then it must have been previously authorized or subsequently must be approved by the corporation. * * *

"Corporate liability for the negligent acts of a mere servant or employee rests upon the doctrine of respondeat superior. 18 R. C. L., p. 786, § 247; 39 C. J., p. 1268, § 1451. The liability of the master for the negligent acts of his vice principal is placed upon very different grounds, namely, that the negligent acts of the vice principal are the very acts of the corporation itself. * * *

"Using the term 'vice principal' as embracing the four classes of corporate agents heretofore referred to: (a) Corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or

division of his business, an examination of the authorities cited will disclose that the basic reason for holding a corporation liable in actual damages for the negligence of a vice principal, is identical with the requirement for the recovery of exemplary damages for gross neglect, namely, that the act must be the act of the corporation, instead of the act of a servant. * * *"

■ Liability for exemplary damages in this case is based solely on the alleged gross negligence of Moffett. Moffett was not a corporate officer. He did not have authority to employ nor to discharge a servant. The appellant had not confided to him the management of the whole or a department or division of its business. Hence, under the rule laid down in the last above quoted paragraph of the opinion of the Supreme Court, he did not have such authority as agent of the corporation as to subject the corporation to liability in exemplary damages for his gross negligence, unless it be because he was engaged in a nondelegable or absolute duty of the master as referred to by the Supreme Court. What was meant by a nondelegable or absolute duty of the master, for a violation of which the corporation would be liable in exemplary damages, is explained by the following quotation from the same opinion:

"Among the absolute or nondelegable duties which the authorities recognize are the following:

"First. The duty to provide rules and regulations for the safety of employees, and to warn them, under certain conditions, as to the hazards of their positions or employment. * * *

"Second. The duty to furnish reasonably safe machinery or instrumentalities with which its servants are to labor. * * * *

"Third. The duty to furnish its servants with a reasonably safe place to work. * * *

"Fourth. The duty to exercise ordinary care to select careful and competent fellow servants or coemployees. * * *"

■ It is not charged that the appellant was negligent in failing to provide rules and regulations for the safety of the employees or in failing to warn them of the danger incident to their work, nor that it failed to exercise ordinary care to select careful and competent fellow servants. It is not contended that the appellant did not originally furnish safe machinery or a safe place in which to work. The machinery was apparently safe when originally furnished by the employer. It did not become unsafe until Moffett, through the other employees, removed the safety line from the cathead. There is no allegation, much less proof to establish it, that any employee with higher authority than Moffett was guilty of gross negligence in failing to discover and repair the defect after the safety line had been removed and before the injury occurred. It is true that Moffett knew of the defect during this time, but he had not been delegated the duty of furnishing and maintaining safe appliances, and, as before stated, he was not possessed of such authority from the corporation as would make him a vice principal and authorize the imposition of exemplary damages against the corporation for his gross negligence. The mere fact that the machinery became unsafe by reason of the manner of its operation did not immediately subject the corporation to liability on the ground that it had failed to discharge the nondelegable duty of furnishing safe instrumentalities with which its employees were to work. It was entitled to a reasonable time in which to discover and repair the defect. Coca-Cola Company v. Williams (Tex. Com. App.) 209 S. W. 396; G., H. & S. A. Ry. Co. v. Waldo, 119 Tex. 377, 29 S.W.(2d) 323; American Bridge Co. v. Seeds, 75 C. C. A. 407, 144 F. 605, 11 L. R. A. (N. S.) 1041. Consequently, liability in this case cannot be based on the failure of the employer to discharge an absolute or nondelegable duty.

Stripped of all surplus verbiage, our holding is that Moffett, the highest classed employee who actually discovered the defect in the machinery in time to have repaired it prior to the injury to Studdard, was not empowered with such authority as to make his acts "the very acts of the corporation itself," and that the evidence is insufficient to raise an issue of gross negligence on the part of any higher classed employee in failing to discover such defect prior to the accident; and that, as a consequence, there is no evidence to justify the imposition of a penalty on the appellant corporation for failure to properly conduct its business.

The judgment of the trial court is reversed, and judgment is here rendered denying plaintiffs a recovery herein.