**356**

Russell Surles, of Dallas, and Lipscomb & Lipscomb, of Beaumont, for appellant.

Howth, Adams & Hart and Elton Cruse, all of Beaumont, for appellees.

### MAGNOLIA PETROLEUM CO. v. BOOTH et al.

No. 3096.

Court of Civil Appeals of Texas. Beaumont.

May 6, 1937.

Rehearing Denied May 12, 1937.

O'QUINN, Justice.

October 5, 1933, Ellis B. Jones, the then husband of appellee Mrs. Troge Booth, and the father of Joe Edd Jones, a minor, was an employee of appellant Magnolia Petroleum Company, and lost his life as the result of a fire while engaged in cleaning an oil still. Mrs. Troge Booth (then wife of Ellis B. Jones) brought this suit in her own behalf, and as next friend of her minor son, Joe Edd Jones, to recover exemplary damages only for the death of her said husband, Ellis B. Jones. The employer, Magnolia Petroleum Company, carried workmen's compensation insurance covering deceased which has been paid to appellees.

A trial to a jury resulted in a verdict and judgment for appellees for $5,000. We have the case on appeal.

Jones was employed and was working as a still cleaner. The stills were what is known as "Cross Stills." They took that name from the man, Cross, that invented or created them. They were arranged in pairs; that is, situated two parallel with each other about four or five feet apart. The next pair was about one hundred feet from the first. The stills were numbered. Deceased Jones worked at stills Nos. 11 and 12. There were some eight pairs of stills—sixteen stills—and when started up for operation they would run from a few days to fifteen days without having to be cleaned out. The cleaning was necessitated by the accumulation of coke in the chambers and tubes. It was the custom and rule

that the stills would be cleaned one at a time, and while one still was being cleaned the other was in operation. There was no connection of any kind in any way between the stills composing one pair. The oil in the stills was heated to 880 or more degrees Fahrenheit, and was subjected to about 650 pounds pressure per square inch while in operation. When it became necessary to clean a still, the fire was cut off of it, and it was steamed for a certain length of time, and then water was run through it to complete cooling it so that it could be opened up and the coke removed. It had become necessary to clean still No. 11, and the process of preparing for cleaning had been had, and at about 8 o'clock on the morning of October 5, 1933, it was ready for opening and cleaning. The stills were operated twenty-four hours per day, and the men worked in shifts of six hours each. A "stillman" was over each crew, and they had three stills, one pair, and then one other still, to attend. F. O. Terry was the "stillman" over stills Nos. 11 and 12 (pair) and 13 which was some 100 feet from 12. There was a "stillman" and crew who operated the stills during each of the four six-hour periods of the day. This was true as to each of the pairs or numbers of stills in operation. Terry had no connection with or supervision of other stills, then Nos. 11, 12, and 13, nor over any crew of men working on stills 11, 12, and 13, other than the one under him for his six-hour period. It is not shown that he had any authority to hire or discharge any employee in the work. On the morning of October 5, 1933, Terry, after assisting in the final preparation of still 11 for cleaning, told his foreman, Mr. Cook, that everything was ready and to proceed to clean the still. Terry then walked around a few feet from the still to inspect the premises, and see that everything was all right in the operation of the stills—11, 12, and 13—under him, as was his duty. He was to constantly supervise and watch after everything in his unit of work during the six hours while he was on duty. Just after Terry walked away from still 11 after telling his foreman, Cook, that the still was ready to be cleaned and to proceed to clean same, another worker, a fellow servant with Jones, came up and by mistake pulled the plug under still 12 which was in operation, and the pulling of the plug permitted the intensely heated oil to flow out into the air, and it exploded covering Jones with the burning oil and he was immediately killed.

Appellees contend that appellant was guilty of gross negligence: (a) In operating still 12 while its twin still 11 was being cleaned; and (b) that it was gross negligence for Terry, the stillman over stills 11 and 12, to absent himself from still 11, and not be present to himself pull the plug to still 11 (the still to be cleaned) or himself directing the pulling the plug, and thus have averted the pulling of the wrong plug —the plug to still 12 which was in operation. In other words, that Terry, being in charge of the crew of men that were cleaning still 11, was vice principal of appellant, and his having absented himself at the time the plug to the still to be cleaned was to be pulled to let out the water in same so as to proceed to clean same, and the fellow servant (co-worker cleaner with deceased) pulling the wrong plug, the one to still 12 then in operation, was gross negligence for which exemplary damages could be recovered.

The jury in answer to special issues found that appellant was guilty of gross negligence in each of the particulars mentioned, and that such negligence was the direct and proximate cause of deceased's death.

After careful consideration of the entire statement of facts, we have concluded that there is no evidence from which it can be reasonably inferred that appellant was guilty of gross negligence in either of the particulars asserted.

"Gross negligence" is defined by Judge Stayton in Missouri Pacific Ry. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, 411, as follows: "Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it."

As said by Judge Smedley, in Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W.(2d) 830, 831, 98 A.L.R. 262: "It is to be observed that the definition quoted uses the words 'conscious indifference,' thus stressing the mental attitude of the person charged to have been grossly negligent. Gross negligence is positive or affirmative, rather than merely passive or negative as ordinary negligence often, and perhaps usually, is. As said in

the discussion in Ruling Case Law of the right to recover exemplary damages for gross negligence: 'The rule is that recovery is permitted, in, and confined to, cases where the negligence is wilful, or where it is so gross as to indicate wantonness or malice.' 8 R.C.L., p. 590. Mere indifference is not enough. The indifference must be *conscious*. The indifference is to the rights or welfare of the person or persons who may be affected by the act or omission. Thus the doctrine of foreseeableness becomes important."

█ The person charged with the act or omission cannot be consciously indifferent to the rights or welfare of another unless he knows, or should know, that such another will probably be affected by the act or omission. It appears without dispute that the building of the stills was according to the usual method and in the manner in which such stills were commonly and usually built for operation, and that they were operated by many of the largest refineries in the country. Also it is without dispute that when the stills were to be cleaned that it was the custom and the cleaning was usually done by cleaning one while the other was in operation. No other accident at the stills of the Magnolia Petroleum Company, appellant, or at any of the other refineries where the Cross stills were operating and in the same manner, that is, one still cleaned while the other was in operation, was shown to have ever happened through a period of more than eleven years. Negligence of no sort was shown in either the construction of the stills or in the method of their operation.

█ As to Terry being absent from the still at the time the accident occurred, it appears without dispute that he was present at the still that morning when the cleaning was to begin; that he assisted in the final preparation of the still for the work, and was present when the heads of the still were removed in readiness for the work, and that he told his foreman of the cleaning crew, Cook, that "it (the still) was in readiness for him to proceed with his work," and he (Terry) then walked away a short distance (about sixteen feet) inspecting the premises to "see if everything is running right," as was his duty. Terry

testified that it was customary for the cleaners themselves to open or pull out the drain plugs, and that it was not supposed to be done by the stillman or under his immediate direction. If it could be said that his being away from the still, at the moment when the fellow servant of Jones inadvertently pulled the plug under still 12 and caused the burning of Jones, was negligence, it could not be gross negligence, for there is no evidence indicating that his act in walking away from the still was entirely wanting in care amounting to a conscious indifference to the rights of Jones or of any of the others constituting the crew engaged in cleaning the still. As we view the record, and the facts are without dispute, there was nothing shown to point to the duty of Terry to foresee or to know, or that he should have foreseen that, under all the facts and circumstances, such an accident would or might occur. As before stated, the stills had been operated and cleaned in this manner for more than eleven years and no accident had occurred. His negligence, if it could be said he was negligent, was not in any way wanton or willful, but merely passive or ordinary negligence. Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W.(2d) 830, 98 A.L.R. 262; Southwestern Sewer Co. v. Cross (Tex.Civ.App.) 93 S.W.(2d) 202; Magnolia Petroleum Co. v. Studdard (Tex.Civ.App.) 83 S.W.(2d) 1047; Robertson v. Magnolia Petroleum Co. (Tex.Civ.App.) 255 S.W. 223.

█ The contention that Terry was a vice principal of appellant has no support. He was a stillman over only three stills, and that for only one six-hour period of the day. He had no general supervision of the still department. Neither did he have any authority to hire or discharge any workman in his crew of cleaners. Magnolia Petroleum Co. v. Studdard (Tex.Civ. App.) 83·S.W.(2d) 1047; Lantry-Sharpe Contracting Co. v. McCracken, 105 Tex. 407, 150 S.W. 1156.

Being convinced that the issue of gross negligence was not raised by the evidence, the judgment is reversed and here rendered for appellant that appellees take nothing by their suit.

Reversed and rendered.