**TULLOS et al. v. TEXAS PIPE LINE CO.**

No. 11027.

Court of Civil Appeals of Texas.   Galveston.
Oct. 28, 1940.

Rehearing Denied Nov. 27, 1940.

Burris & Benton, of Houston, for appellants.

Sewell, Taylor, Morris & Connally and Ben G. Sewell, all of Houston, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 55th District Court of Harris County—entered in response to appellee's motion therefor at the close of the appellants' evidence and before it had presented any—withdrawing the cause from the jury and decreeing that appellants recover nothing as against the appellee, upon its conclusion that, under the undisputed evidence, "there were no undisputed issues of fact which should be submitted to the jury."

The suit was by the surviving wife and children of J. D. Tullos, deceased, appellants, against the Texas Pipe Line Company, a corporation, appellee, to recover exemplary damages as a result of the death of John D. Tullos, on May 20 of 1937, from injuries received by him in an oil-fire while in the employ of the appellee as a pipeline connection foreman at its East Houston tank farm in Harris County.

The appellants, in their brief, assert that the testimony showed the accident to have happened in these circumstances:

"On the 19th of May, 1937, in the early part of the morning, J. D. Tullos went to the East Houston Tank Farm, with a gang of men to superintend the making of a connection in a ten-inch pipe line. That a hole called a bell-hole was dug under the ten-inch pipe line at the place where the connection was to be made, the hole being approximately 6 by 9 feet on the surface and about 3½ to 4 feet deep. The ten-inch line had previously had oil in it and a suction pump was placed on the line to clean out the line preparatory to cutting into it for the purpose of welding in a six-inch line connecting with it. At the place where the cut was to be made in the ten-inch line a small hole was cut into the ten-inch line with a cold chisel and the line tested to determine whether there was still any oil in it. After the line had been tested and found to contain no oil, Travis Robinson, a member of the crew, started cutting a circular opening into the east side of the ten-inch line, which runs in a north and south direction, with an acetylene torch. This occurred some time between 10:00 and 11:00 o'clock A. M. At this time J. D. Tullos was standing on the east side of the pipe line opposite where the hole was being cut into the line and about 10 to 15 feet away from it. At the time, B. B. Fitzpatrick, District Foreman, and Mr. Russell, Assistant District Foreman, both superiors of J. D. Tullos, were also present. Just about the time that the circular opening being cut by the acetylene torch in the 10-inch pipe line had been completed, a large amount of flaming oil burst out of the opening, knocking out the plug and covering the clothes and body of J. D. Tullos with a sufficient amount of flaming oil to burn him to the extent that he died as a result thereof on the following morning about 2:30 A. M."

In inveighing here against the adverse judgment, after reciting that the appellee had, prior to the accident, provided insurance therefor and subsequent thereto had been paying the widow and minor children the prescribed benefits under the Workmen's Compensation Law, Vernon's Ann. Civ.St. art. 8306 et seq., the appellants further charge the exemplary damages to have inured to them as a result of these acts of gross negligence of the appellee-employer toward the deceased employee, each of which proximately caused the latter's injury and death, to-wit:

(1) "In ordering that J. D. Tullos use an acetylene torch in the cutting into the ten-inch pipe-line on the occasion in question and that said gross negligence proximately caused the injuries which resulted in his death."

(2) "In failing to require that pipe lines such as the ten-inch line upon which Tullos was cutting when killed, be cut with either boring-bars or hand-tools, and that such gross negligence proximately caused the injuries and death of J. D. Tullos."

(3) "In failing to provide metal shields to protect J. D. Tullos and others working about a pipe line which was being cut with an acetylene torch, and that such gross negligence was the proximate cause of the death of J. D. Tullos."

(4) "In failing to make rules and regulations forbidding the transfer of oil from one tank to another in the vicinity of the place where a line was being cut with an acetylene torch, prior to the date of the accident, and that such gross negligence was a proximate cause of the injuries and death of J. D. Tullos."

(5) "The evidence failed to show as a matter of law that J. D. Tullos assumed the risks upon the occasion in question, so as to preclude the plaintiffs from bringing an action for his death."

(6) "The evidence failed to show as a matter of law that J. D. Tullos was guilty of contributory negligence proximately causing or proximately contributing to cause his injuries and death."

The appellee answered by general denial, pleas of unavoidable accident, contributory negligence, and assumed risk upon J. D. Tullos' part "in selecting the method and plan of operation used in making the connection, in directing the welder to cut into the line, in failing to personally inspect the line to determine if it was free from oil, in standing at the edge of the bell hole at the time the ten-inch pipe was being cut, and in other respects."

■ In this court it meets appellants' given contentions for gross negligence with these counter-propositions:

"The trial court did not err in withdrawing the case from the jury and entering judgment for the defendant, because there was no evidence that the defendant was guilty of gross negligence in 'ordering'. J. D. Tullos to use an acetylene torch in cutting into the ten-inch pipe line on the occasion in question, or in failing to require the use of boring bars or hand tools for such work, it being established by the uncontradicted testimony that:

"(a) The method used in cutting the pipe line with an acetylene torch was the usual and customary method adopted by all companies engaged in this type of work.

"(b) The defendant had used this method of cutting into pipe lines for over ten years without a fire or explosion ever occurring.

"(c) The deceased, J. D. Tullos, had used this identical method in performing this work for defendant on 'literally hundreds' of occasions, without a fire or explosion ever occurring.

"(d) The deceased, J. D. Tullos, never complained to the defendant that he con-

sidered this method as unusually hazardous, although the defendant held monthly safety meetings, which Tullos attended regularly, at which the employees were urged to report any hazardous working conditions or facilities.

"(e) This method of work had been found to be safe and practicable in actual experience over a period of ten years, when the usual precautions were taken to clear the pipe line with suction pumps and test it for oil through a small hole drilled into the pipe, and on this occasion, in accordance with the defendant's instructions, the acetylene torch was not applied to the pipe line until these usual precautions had first been taken.

"(f) The deceased, J. D. Tullos, was not 'ordered' by the defendant to use an acetylene torch in cutting the pipe, but the defendant simply approved this method, it being the duty of Tullos as a 'connection foreman' to recommend the use of any other method which he considered safe and practicable."

■ "The trial court did not err in withdrawing the case from the jury and entering judgment for the defendant, because there was no evidence that the defendant was guilty of gross negligence in failing to provide 'metal shields' for Tullos and others working about the pipe line which was being cut with an acetylene torch."

■ "The trial court did not err in entering judgment for the defendant at the close of the plaintiffs' evidence, for the reason that there was no evidence of any probative value from which the jury could have found that the defendant was guilty of gross negligence in failing to make rules and regulations forbidding the transfer of oil from one tank to another in the vicinity of the place where the line was being cut with an acetylene torch, and that such gross negligence was a proximate cause of the injuries and death of J. D. Tullos, because:

"(a) Under the undisputed evidence the defendant did have such a rule and regulation.

"(b) Under the undisputed evidence a failure, in any event, to have had such a rule or regulation could not have constituted gross negligence.

"(c) A failure, in any event, to have had such a rule or regulation could not

have been a proximate cause of the death of J. D. Tullos because there was no evidence of any probative value establishing any causal connection between an omission to have such a rule and the death of J. D. Tullos."

It further thus presents its affirmative defenses of assumed risk and contributory negligence, in event it be found or held that there was any evidence of probative force of gross negligence developed against it, which it strenuously denies, as follows:

"The trial court did not err in entering judgment for the defendant at the close of plaintiff's evidence, because under the undisputed evidence the plan and method of operation being used in making the connection into the ten-inch line was the usual and customary plan and method used in such work; that fact was well known to the deceased, J. D. Tullos, and by reason of his voluntary participation therein he assumed the risks and dangers incident thereto and the risk of danger of being injured in the manner in which he was injured, as a matter of law."

"The trial court did not err in entering judgment for the defendant at the close of plaintiffs' evidence, because under the undisputed evidence J. D. Tullos, the deceased, was a foreman, with long experience, delegated to supervise the work being conducted on the occasion in question, and accordingly in a position superior or equal to that of any of the agents of the defendant to know and appreciate the dangers in performing the work in question with the tools and appliances furnished by defendant for that purpose, and in accordance with the method of work approved by defendant, there being no hidden imperfection or defect in the instrumentalities used, nor dangers to be foreseen open to the observation of the agents of defendant, but hidden to the deceased."

"Since under the undisputed evidence the deceased, J. D. Tullos, had been in the employ of defendant twenty-two years, and had had wide experience in the type of work in which he was engaged on the occasion in question, by reason of which he had been delegated by the defendant as 'connection foreman', with the authority and duty to supervise the details of the work being performed on the occasion of his injuries, if there was any evidence warranting a finding by the jury that the defendant was guilty of gross negligence in any respect alleged by the plaintiffs, it must

follow, as a matter of law, that the dangers and risks in performing the work in the manner in which it was being performed were so open and obvious that Tullos would be charged, as a matter of law, with having assumed them."

"Since under the undisputed evidence the deceased, J. D. Tullos, had been in the employ of defendant twenty-two years, and had had wide experience in the type of work in which he was engaged on the occasion in question, by reason of which he had been delegated by the defendant as 'connection foreman', with the authority and duty to supervise the details of the work being performed on the occasion of his injuries, if there was any evidence warranting a finding by the jury that the defendant was guilty of gross negligence in any respect alleged by the plaintiffs, it must follow, as a matter of law, that the deceased, J. D. Tullos, was guilty of contributory negligence."

After a painstaking examination of the statement of facts, especially of the testimony therein reflected which had any bearing upon the issues of gross negligence, assumed risk, and contributory negligence, this court is constrained to hold the trial court to have been correct, under these conclusions:

(1) There was not shown in this instance in any of the respects charged "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it";

(2) That if, however, there was enough testimony to raise a jury issue of such gross negligence in any of the particulars so alleged, then it conclusively if not undisputedly appears from the other uncontroverted facts in evidence that the unfortunate employee in this instance had both assumed the risk he took, in doing the particular work in the circumstances he knew to exist, and, in so doing, was also guilty of negligence upon his own part that contributed to his injury.

In other words, it seems reasonably plain to this court that the appellants have not established sufficient basis upon which to predicate the gross negligence which alone they depended upon.

Since the authoritative determination of the controversy depends at last upon a proper appraisal of the entire body of the evidence, which the trial court construed

to require the peremptory action taken, it becomes necessary to consider what it was; in this court's opinion, no restatement nor résumé of its most material features could either be more comprehensive or correct than that embodied in the several propositions quoted from the appellee's brief supra; it would, therefore, be a needless repetition to again detail them, wherefore they are adopted as the findings of this court upon the several phases of the case they cover.

It is further concluded that the several propositions of law tendered in those quotations are likewise, in each instance, sound, as indicated by the authorities respectively stated under them; listing them successively under the same numbers as the propositions themselves, the main ones of those authorities are these:

(1) Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W.2d 830, 98 A.L.R. 262; Taylor v. White, Tex.Civ. App., 156 S.W. 349; Id., Tex.Com.App., 212 S.W. 656; Bering Mfg. Co. v. Sedita, Tex.Civ.App., 216 S.W. 639, writ of error refused; Van Landers v. West Lbr. Co., Tex.Civ.App., 227 S.W. 692; 20 R.C.L., Sec. 23, p. 30; Texas & Pacific R. Co. v. Perkins, Tex.Com.App., 48 S.W.2d 249; Annotation, 98 A.L.R. 267; Texas Pacific Coal & Oil Co. v. Robertson, supra; Rio Grande Valley Tel. Co. v. Hocut, Tex.Civ. App., 93 S.W.2d 167, writ of error dismissed; Bonner v. Texas Co., 5 Cir., 89 F.2d 291; Magnolia Pet. Co. v. Booth, Tex.Civ.App., 105 S.W.2d 356; Robertson v. Magnolia, Tex.Civ.App., 255 S.W. 223, writ of error dismissed; Southwestern Sewer Co. v. Cross, Tex.Civ.App., 93 S. W.2d 202; Medlin Milling Co. v. Mims, Tex.Civ.App., 173 S.W. 968, 972, writ of error refused; 39 Corpus Juris, § 449; p. 329; Nix v. Texas & Pacific R. Co., 82 Tex. 473, 18 S.W. 571, 27 Am.St.Rep. 897; French v. Southwestern Tel. Co., Tex.Civ. App., 162 S.W. 406; Gulf, C. & S. F. Ry. Co. v. Warner, Tex.Civ.App., 36 S.W. 118.

(2) Robertson v. Magnolia Petroleum Co., Tex.Civ.App., 255 S.W. 223, writ of error dismissed.

(3) Koenig v. Marti, Tex.Civ.App., 103 S.W.2d 1023, 1029; Markusfeld v. Zahn, Tex.Civ.App., 99 S.W.2d 438; International & G. N. R. Co. v. Arias, 10 Tex.Civ. App. 190, 30 S.W. 446; McCormick & Ray's Texas Law of Evidence, 1937, § 4, p. 7; Sanner v. Atchison, T. & S. F. R. Co., 17 Tex.Civ.App. 337, 43 S.W. 533; writ of error refused; Harris v. Missouri-K.-T. Ry., Tex.Civ.App., 283 S.W. 895, 903; Texas Pacific Coal & Oil Co. v. Robertson, supra.

(4) St. Louis Southwestern Ry. v. Brisco, 100 Tex. 354, 99 S.W. 1020; Gulf, C. & S. F. Ry. v. Huyett, 99 Tex. 630, 92 S.W. 454, 5 L.R.A., N.S., 669; Texas & Pac. Ry. v. Bradford, 66 Tex. 732, 2 S.W. 595, 59 Am.Rep. 639; Bonnet v. Galveston, H. & S. A. R. Co., 89 Tex. 72, 33 S.W. 334; Texas & N. O. R. Co. v. McKee, 9 Tex.Civ. App. 100, 29 S.W. 544, writ of error denied; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Tex. 19; Missouri, K. & T. Ry. v. Spellman, Tex.Civ.App., 34 S.W. 298; Brownwood Oil Mill v. Stubblefield, 53 Tex.Civ. App. 165, 115 S.W. 626; Fort Worth Light & Power Co. v. Moore, 55 Tex.Civ. App. 157, 118 S.W. 831, 836; Seabord Airline Ry. v. Horton, 233 U.S. 492, 34 S.Ct. 635, 58 L.Ed. 1062, 1063, L.R.A. 1915 C, 1, Ann.Cas. 1915 B, 475; St. Louis S. W. Ry. Co. v. Hynson, 101 Tex. 543, 109 S.W. 929; Patton v. Dallas Gas Co., 108 Tex. 321, 192 S.W. 1060; Ft. Worth & R. G. R. Co. v. Robinson, 37 Tex.Civ.App. 465, 84 S.W. 410, affirmed by Supreme Court, 99 Tex. 110, 87 S.W. 667; Missouri Pacific R. Co. v. Somers, 71 Tex. 700, 9 S.W. 741, on subsequent appeal Id., 78 Tex. 439, 14 S.W. 779; Texas & Pacific R. Co. v. Perkins, Tex.Com.App., 48 S.W.2d 249, 39 C.J. § 946, p. 743; section 949(c), p. 746.

(5) Fort Worth, L. & P. Co. v. Moore, 55 Tex.Civ.App. 157, 118 S.W. 831, 835; City of Munday v. Shaw, Tex.Civ.App., 100 S.W.2d 765.

The rules governing this cause in the several features so detailed in the quoted propositions, as exemplified and applied in the many authorities thus severally cited, are in nowise undermined by the holdings in the two causes cited by the appellants as having to do favorably to their contentions with instances of gross negligence, to-wit: Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409; and Rio Grande Valley Tel. Co. v. Hocut, Tex.Civ.App., 93 S.W.2d 167, writ of error dismissed.

Those causes are distinguishable upon their facts from this one, in that in the Morton case the employer was shown not only to have for years furnished its employees a dangerous machine to work with, but that the one there involved at the particular time that one was killed had been furnished him to do his work with under the company's representation that it had

just been repaired, when it had not been; whereas, in the Hocut case, the injured employee's foreman, though himself having actual knowledge of the probable danger from a charged electric line, both failed to inspect the premises or warn the employee of the hidden danger that caused his injury.

■ In view of these conclusions and the stated grounds on which they are rested, it is not thought a needful purpose would be subserved by further extending the opinion; upon the whole, it seems clear that no proper predicate was laid upon which to base that positive or affirmative dereliction of an employer toward its employee that is so clearly defined in our lawbooks as gross negligence—that is, as it has hereinbefore been characterized in following our Supreme Court's definition in Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W.2d 830, 831, as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it."

■ The appellee's cross-assignment of error against the trial court's having admitted Mrs. Tullos' testimony to the effect that her husband had told her at the hospital some two hours after the accident, that "some of those green scissorbills opened the gate and turned oil into the line and it came down on us and when it hit the hot line it throwed hot oil on us and burned us," is overruled, upon the conclusion that it was admissible under the res gestae rule. The appellee's objection was that it was inadmissible because hearsay, and at most only the opinion and conclusion of the dying man; the setting was that Mr. Tullos called for his wife at the hospital to which he had been taken immediately following the explosion, told her he thought he was going to die, and to answer to her inquiry, "How did this happen?", made the quoted statement.

It is thought this situation is covered by our holdings in such cases as these: Southern Surety Company v. Weaver, Tex. Com.App., 273 S.W. 838; Beck v. Wahlgren, Tex.Civ.App., 87 S.W.2d 890; Missouri, K. & T. Ry. v. Moore, 24 Tex.Civ. App. 489, 59 S.W. 282.

■ Notwithstanding its admissibility, however, this court further agrees with the learned trial Judge in holding that, whatever its potentiality, this statement in no-

wise undermines the overwhelming case against any gross negligence that was otherwise developed by the definite testimony referred to supra; under the appellee's indisputably established rules and regulations, as well as under the invariable practice as between it and its employees, inclusive of Mr. Tullos, in apportioning their several duties and responsibilities, it was made to undisputedly appear that none other than its engineer and gauger were ever under any circumstances to open or close its oil-line gates—that under no circumstances were "green scissorbills" permitted or allowed to do such a thing; wherefore, "there is no evidence of any probative value that any gate was opened by any employee of the appellee, whose conduct in that respect would have necessarily been affected by a rule forbidding transfers from tank to tank in the vicinity of the place where a line was being cut with an acetylene torch. In the absence of such proof, no causal connection is established between any omission to have such a rule and the resulting injuries to Tullos."

Without further discussion, an affirmance will enter.

Affirmed.